## CROSS LAKE SHOOTING AND FISHING CLUB *v.* STATE OF LOUISIANA.

### ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 46. Argued April 18, 1912.—Decided May 13, 1912.

The contract clause of the Federal Constitution is not directed against all impairment of contract obligations, but only against such as result from a subsequent exertion of the legislative power of the State.

The contract clause does not reach mere errors committed by a state court when passing upon the validity and effect of a contract under the laws existing when it was made; and, even if such errors operated to impair the contract obligation, there is no Federal question, in the absence of a subsequent law, on which to rest the decision of the state court.

Where the state court has decided that the plaintiff in error never acquired title because the grant was not one *in præsenti* but depended upon conditions subsequent which had never been fulfilled, and rests its judgment on that fact alone, and not on the effect of a subsequent statute which might have affected the title had the title of plaintiff in error been perfected, there is no Federal question.

Writ of error to review 123 Louisiana, 208, dismissed.

THE facts are stated in the opinion.

*Mr. Edgar H. Farrar,* with whom *Mr. John D. Wilkinson* was on the brief, for plaintiff in error.

*Mr. W. P. Hall,* with whom *Mr. Walter Guion,* Attorney General of the State of Louisiana, was on the brief, for defendant in error.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This was a suit by the State of Louisiana against the

Cross Lake Shooting and Fishing Club to recover about 11,000 acres of land, in the Parish of Caddo in that State, of which the fishing club was in possession, and to which it was asserting title, under a sale and deed made to its remote grantors by the Board of Commissioners of the Caddo Levee District. Although defeated in the district court, the State prevailed in the Supreme Court and there obtained a final judgment in its favor. 123 Louisiana, 208. The fishing club has brought the case here, claiming that the judgment gave effect to a state law which impinged upon the contract clause of the Constitution of the United States.

The facts are these: By Act No. 74 of 1892 the legislature of the State created the Caddo Levee District, defined its boundaries, vested the control and management of its affairs in a Board of Commissioners, clothed the Board with corporate powers, and made to it a grant of state lands in the following terms:

"SEC. 9. Be it further enacted, etc., That in order to provide additional means to carry out the purposes of this act, and to furnish resources to enable the said Board to assist in developing, establishing and completing the levee system in the said District, all lands now belonging or that may hereafter belong to the State of Louisiana and embraced within the limits of the Levee District as herein constituted shall be and the same are hereby granted, given, bargained, donated, conveyed, and delivered unto the said Board of Commissioners of the Caddo Levee District, whether the said lands or parts of lands were originally granted by the Congress of the United States to the State of Louisiana or whether the said lands have been or may hereafter be forfeited, or bought in by or for, or sold to the State at tax sale for non-payment of taxes; where the State has or may hereafter become the owner of lands by or through tax sales, conveyances thereof shall only be made to the said Board of Levee Commissioners

after the period of redemption shall have expired; provided, however, any and all former owners of lands which have been forfeited to purchasers by or sold to the State for non-payment of taxes may at any time within six months next ensuing after the passage of this act redeem the said lands or all of them upon paying to the Treasurer of this State all taxes, costs and penalties due thereon, down to the date of the said redemption, but such redemption shall be deemed and be taken to be sales of lands by the State and all and every sum or sums of money so received, shall be placed to the credit of the Caddo Levee District. After the expiration of the said six months it shall be the duty of the Auditor and Register of the State Land Office, on behalf of and in the name of the State to convey to the said board of Levee Commissioners by proper instruments of conveyance, all lands hereby granted or intended to be granted and conveyed to the said Board whenever from time to time the said Auditor or Register of the State Land Office or either of them shall be requested to do so by the said Board of Levee Commissioners or by the President thereof, and thereafter the said President of the said Board shall cause the said conveyances to be properly recorded in the Recorder's office of the respective parishes wherein the said lands are located and when the said conveyances are so recorded the title to the said lands with the possession thereof shall from thenceforth vest absolutely in the said Board of Commissioners, its successors or grantees. The said lands shall be exempted from taxes after being conveyed to, and while they remain in the possession or under the control of the said Board. The said Board of Levee Commissioners shall have the power and authority to sell, mortgage and pledge or otherwise dispose of the said lands in such quantities, and at such times, and at such prices as to the Board may seem proper. But all proceeds derived therefrom shall be deposited in the State Treasury

to the credit of the Caddo Levee District and shall be drawn only upon the warrants of the President of said Board, properly attested as provided in this act."

The lands in question were within the district so created and at the date of the act were owned by the State, but whether it had acquired them as swamp-lands under the legislation of Congress (Acts, March 2, 1849, 9 Stat. 352, c. 87; September 28, 1850, 9 Stat. 519, c. 84) or as the bed of what was a navigable lake when the State was admitted into the Union (see *Pollard* v. *Hagan*, 3 How. 212), is left uncertain. For present purposes, however, this uncertainty may be disregarded and the State's title treated as resting on the swamp-land grant by Congress, as was claimed by the fishing club in the state courts. No instrument conveying the lands to the Board of the Levee District was ever executed by the State Auditor or the Register of the State Land Office or recorded in the recorder's office of the parish. But in 1895 the Board sold and deeded the lands to the remote grantors of the fishing club for the agreed price of $1,100, or 10 cents per acre, which was deposited in a bank under an agreement whereby it would be payable to the Board whenever the latter should perfect the title by obtaining a conveyance from the Auditor and Register. Such a conveyance was not obtained, and in December, 1901, the grantees in the deed requested the Board to complete the title, and in that connection offered to pay $3,500 more for the lands; whereupon the Board adopted a resolution accepting the offer and authorizing its president to take proper steps to perfect the title. But it does not appear that the additional sum was either paid or tendered, or that anything was done under the resolution.

In July, 1902, the legislature of the State passed an act (Laws of 1902, No. 171, p. 324) authorizing the Register of the State Land Office to sell these lands at not less than $5 per acre, nor in greater quantities than 320 acres to

any one person, directing that the proceeds of such sales be placed to the credit of the Board of the Levee District, and containing the following repealing provision:

"Section 4. Be it further enacted, etc., That Act No. 74 of the Acts of the General Assembly of Louisiana for 1892 and Act No. 160 of the Acts of 1900 be and the same are hereby repealed in so far as they may in any way whatever affect any of the lands described herein, the same never having been transferred by the Register of the State Land Office and the State Auditor, nor either of them by any instrument of conveyance from the State as required by said act to complete the title to same."

This suit was brought in 1906. The petition made no mention of the act of 1902, but proceeded upon the theory, among others, that under § 9 of Act No. 74 of 1892, *supra*, the Board of the Levee District was wholly without authority to sell or otherwise dispose of the lands until a proper instrument conveying them to the Board had been executed by the Auditor and Register and duly recorded in the recorder's office of the parish, and that, as no such instrument had been executed or recorded, the sale and deed by the Board, under which the fishing club was asserting title, was unauthorized and void. The answer, which was also silent respecting the act of 1902, alleged, in substance, that the act of 1892 was a grant *in præsenti* of the lands and operated to transfer them to the Board of the Levee District without any conveyance from the Auditor and Register; that the fishing club's grantors purchased on the faith of that act; and that to permit the State to retake the lands would impair the obligation of its contract embraced in the act.

At the hearing in the district court counsel for the State placed some reliance upon the act of 1902, but the court ruled that the act of 1892 was a grant *in præsenti* of all lands falling within its terms other than those acquired through tax sales; that the provision requiring convey-

ances from the Auditor and Register related only to lands acquired through such sales; that, as the lands in suit had not been acquired in that way, the sale and deed by the Board to the fishing club's grantors were authorized and valid, even although there was no conveyance from the Auditor and Register; and that the rights acquired thereby were not divested or affected by the subsequent act of 1902. The record does not disclose that there was any reliance upon that act in the Supreme Court, and yet it was practically conceded in argument here that there was. But, whether relied upon or not, the act was mentioned in the statement preceding the court's opinion and was not otherwise noticed or treated as a factor in the decision. The court held that the act of 1892 was not a grant *in præsenti;* that a conveyance from the Auditor and Register was essential to invest the Board with any disposable title; and that, in the absence of such a conveyance, the sale and deed by the Board were wholly unauthorized and void. Upon that subject the court said (p. 214):

"In our opinion, the levee board acquired no title to the lands in dispute under the act of 1892, because no deed of conveyance thereto was ever executed by the Auditor and Register, or either of them, and, of course, no such deed was ever recorded. . . . This conclusion renders it unnecessary to consider the other issues presented by the pleadings, . . .; and it is wholly immaterial whether the board attempted to sell the land or to give it away, or whether it received an amount agreed to be paid or received nothing. Our reasons for the conclusion that the board acquired no title, and could therefore convey none, predicated on the admitted fact that no deed of conveyance of the lands in question has ever been executed by the auditor or register, are, briefly, as follows:"

Then, after proceeding with an analysis and interpreta-

tion of the provisions of § 9 of the act of 1892, it was further said (p. 217):

"Upon the whole, we are of opinion that the law in question is susceptible of but one interpretation, i. e., that its makers intended that disposable title to all lands granted or intended to be granted by it should vest in the grantee only upon registry, in the parishes where the lands lie, of proper instruments of conveyance executed by the Auditor and Register of the State Land Office. So far as the tax lands are concerned, the reason for thus qualifying the grant is obvious enough. . . . As to the swamp lands, it may well be that in many instances there were pending unsettled claims and controversies of which the land office was advised, with which the Register alone was qualified to deal, and which rendered it inadvisable that new titles should issue save to the knowledge of that officer. But whether these views as to the reasons which inspired the law, be correct or not, the law itself is plain, and it has (in effect) twice received from this court the interpretation which we are now placing on it; once in a case involving lands formerly constituting the bed of a shallow lake, and again in a case involving lands acquired by the state under its tax laws."

With this statement of the case we come to consider whether it presents any question under that clause of the Constitution which declares, "No State shall . . . pass any . . . law impairing the obligation of contracts." This clause, as its terms disclose, is not directed against all impairment of contract obligations, but only against such as results from a subsequent exertion of the legislative power of the State. It does not reach mere errors committed by a state court when passing upon the validity or effect of a contract under the laws in existence when it was made. And so, while such errors may operate to impair the obligation of the contract, they do not give rise to a Federal question. But when the state court,

either expressly or by necessary implication, gives effect to a subsequent law of the State whereby the obligation of the contract is alleged to be impaired, a Federal question is presented. In such a case it becomes our duty to take jurisdiction and to determine the existence and validity of the contract, what obligations arose from it, and whether they are impaired by the subsequent law. But if there be no such law, or if no effect be given to it by the state court, we cannot take jurisdiction, no matter how earnestly it may be insisted that that court erred in its conclusion respecting the validity or effect of the contract; and this is true even where it is asserted, as it is here, that the judgment is not in accord with prior decisions on the faith of which the rights in question were acquired. *Knox* v. *Exchange Bank*, 12 Wall. 379, 383; *Central Land Co.* v. *Laidley*, 159 U. S. 103, 111–112; *Bacon* v. *Texas*, 163 U. S. 207, 220–221; *Turner* v. *Wilkes Co.*, 173 U. S. 461; *National Mutual Building and Loan Ass'n* v. *Brahan*, 193 U. S. 635, 647; *Hubert* v. *New Orleans*, 215 U. S. 170, 175; *Fisher* v. *New Orleans*, 218 U. S. 438; *Interurban Railway Co.* v. *Olathe*, 222 U. S. 187.

It is most earnestly insisted that, even conceding that our jurisdiction is as restricted as just stated, it still includes the present case, because the decision of the state court, although not expressly rested upon the act of 1902, by necessary implication gave effect to it; and in support of this position it is said that but for that act the State could not have maintained the suit. But we do not understand that the State's right to maintain the suit was dependent upon that act, nor do we perceive any reason for believing that the act was an influential, though unmentioned, factor in the decision. Under the construction given to the act of 1892 the State still held the title, no conveyance having been made to the Board of the Levee District, and, of course, the right to maintain the suit was appurtenant to the title.

What has been said sufficiently demonstrates that no effect whatever was given to the act of 1902 and therefore that the case presents no· question under the contract clause of the Constitution; and, as there is no suggestion of the presence of any other Federal question, the writ of error is

*Dismissed.*