JOHNSON BONDING CO.,
INC., Plaintiff,

v.

COMMONWEALTH OF KENTUCKY
et al., Defendants.

Civ. A. No. 76–24.

United States District Court,
E. D. Kentucky.

Sept. 22, 1976.

Harold G. Slone, Lexington, Ky., for plaintiff.

Robert F. Stephens, Atty. Gen., Frankfort, Ky., C. Gibson Downing, Jr., Harry B. Miller, Jr., Miller, Griffin & Marks, Lexington, Ky., for defendants.

## MEMORANDUM OPINION

SILER, District Judge.

This is an action for declaratory and injunctive relief in which the plaintiff bonding company seeks the convening of a three-judge panel to consider its claim that House Bill No. 254 (hereinafter "the Act"), passed during the regular 1976 session of the Kentucky General Assembly, violates the United States and Kentucky Constitutions.

Briefly stated, plaintiff contends that the Act, which, *inter alia,* makes it unlawful to engage in the business of bail bondsman in the Commonwealth of Kentucky, violates the Eighth Amendment's prohibition against "excessive bail"; deprives it of liberty and property without due process of law, and denies it equal protection of the laws in violation of the Fifth and Fourteenth Amendments"; deprives it of its right to contract "as guaranteed by Amendment 14," "Article 1, Section 5" of the United States Constitution, and 42 U.S.C. § 1983; and, finally, violates the doctrine of separation of powers.

Defendants have filed a motion to dismiss on grounds of: (1) failure to state a claim upon which relief can be granted, (2) collateral estoppel or res judicata, and (3) that plaintiff raised these issues in state court and is now precluded from asserting them here under the doctrine of *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). However, plaintiff has requested a three-judge court to consider his application for injunctive relief. Under these circumstances ordinarily a "single judge shall not . . . dismiss the action, or enter a . . . final judgment," 28 U.S.C. § 2284(5), except as noted hereinafter.

## JURISDICTION

The Court's initial inquiry must be to determine whether subject matter jurisdiction is present. The United States Supreme Court has:

[A]lways recognized a single judge's power to dismiss a complaint for want of general subject-matter jurisdiction, without inquiry into the additional requisites specified in §§ 2281 and 2282.

*Gonzalez v. Automatic Employees Credit Union,* 419 U.S. 90, 97 n. 14, 95 S.Ct. 289, 294, 42 L.Ed.2d 249 (1974). *Accord, Ex parte Poresky,* 290 U.S. 30, 31, 54 S.Ct. 3, 78 L.Ed. 152 (1933).

■ Plaintiff attempts to place jurisdiction in this Court under 28 U.S.C. § 1531 (sic), a non-existent statute. It also claims jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Civil Rights Act, 42 U.S.C. § 1983. Neither of the latter two statutes alone confers jurisdiction on the Court. They merely create causes of action. See *Hagans v. Lavine,* 415 U.S. 528, 535, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) (42 U.S.C. § 1983); *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950) (28 U.S.C. § 2201). However, in paragraph number 6 of the complaint, plaintiff alleges that the amount in controversy exceeds $10,000.00 exclusive of interest and costs and "arises under the Constitution and laws of the United States." We assume, therefore, that the jurisdictional statute plaintiff has in mind is 28 U.S.C. § 1331. The allegations of the complaint are sufficient to come within this statute.

## THREE JUDGE COURT

■ The "conditions precedent to convening a three-judge court under 2281 and 2284" are threefold: (1) the constitutional question raised must be substantial; (2) the action must seek to enjoin a state official from executing a statute of statewide application; and (3) the complaint must, at least formally, allege a basis for equitable relief. *Gonzalez v. Automatic Employees Credit*

*Union, supra,* 419 U.S. at 94, 95 S.Ct. 289; *Noe v. True,* 507 F.2d 9 (6th Cir. 1974). We consider these requirements in reverse order.

Plaintiff, in paragraph 15, alleges "that it will suffer great and irreparable injury for which there is no adequate remedy at law." Therefore, the Court finds that the complaint, at least formally, alleges a basis for equitable relief.

The statute in question is of statewide application. However, there is some question whether the Governor and Attorney General of Kentucky are the proper state officials to be enjoined from executing the statute.

■ Plaintiff alleges in paragraph number 3 of the complaint that the Governor and Attorney General:

are made Defendants herein for the reason that this action involves the enforcement, operation, and execution of a state statute and the aforementioned officers are required to have at least (5) days notice of any hearing on this Complaint.

We think notice to these particular officers is required under 28 U.S.C. § 2284(2) only because of the obvious need to advise them that the constitutionality of a state statute is being called into question. This does not mean that they are always the proper defendants.

■ Title 28 U.S.C. § 2281 requires a three-judge court to consider an application for an injunction to restrain "the action of any officer of such State *in the enforcement or execution of such statute."* (Emphasis supplied.) The United States Supreme Court has said that "[t]his requirement is one of substance, not of form, and it is not satisfied by joining, as nominal parties defendant *state officers whose action is not the effective means* of the enforcement or execution of the challenged statute." (Emphasis supplied.) *Wilentz v. Sovereign Camp,* 306 U.S. 573, 579–80, 59 S.Ct. 709, 713, 83 L.Ed. 994 (1939). A careful reading of the Act discloses no responsibility of the Governor or the Attorney General for the enforcement or execution of this statute. The Act provides that it is to be executed and enforced by the various Kentucky courts and their clerks. Except for the general provision in Section 81 of the Kentucky Constitution that the Governor "shall take care that the laws be faithfully executed," the Court finds no Kentucky authority for any power in the Governor or Attorney General which would enable either of them to comply with an injunction enjoining the enforcement of this statute, if a three judge court ultimately finds that the plaintiff is entitled to relief. In short, the state officers who must be enjoined are those who have responsibility for the enforcement or execution of this statute. See *Ashenhurst v. Carey,* 351 F.Supp. 708 (N.D.Ill.1972). The Court has some question at this juncture as to whether this criterion for empaneling a three judge court is met.

(The Court notes, in this regard, that two suits challenging the validity of the Act were filed in state court. In one, brought in Jefferson Circuit Court, Louisville, the Bonding Association of Kentucky and certain bonding companies sought, *inter alia,* to enjoin David L. Armstrong, the Commonwealth's Attorney for the 30th Judicial District of Kentucky, who, it was alleged, "is charged with the responsibility for enforcing, within such district, the statutes of Kentucky." The other suit was brought in Fayette Circuit Court by the Commonwealth of Kentucky against certain bonding companies, including the plaintiff herein.)

However, in view of the desirability of a speedy resolution of the three-judge court question, the Court will consider whether the third "condition precedent" is met, so that this action may go forward with as much speed as possible under the circumstances.

■ The most important requirement for the convening of a three-judge court is whether plaintiff's claim presents a "substantial federal question."

■ "The lack of substantiality in a federal question may appear either because it is obviously without merit or because its unsoundness so clearly results from the previous decisions of . . . (the Supreme)

court as to foreclose the subject." *California Water Service Co. v. City of Redding,* 304 U.S. 252, 255, 58 S.Ct. 865, 867, 82 L.Ed. 1323 (1938).

In evaluating prior decisions of the United States Supreme Court, we are guided by the language of *Goosby v. Osser,* 409 U.S. 512, 518, 93 S.Ct. 854, 858, 35 L.Ed.2d 36 (1973):

> "Constitutional insubstantiality" . . . has been equated with such concepts as "essentially fictitious," . . . "wholly insubstantial," . . . "obviously frivolous," . . . and "obviously without merit," . . . . The limiting words "wholly" and "obviously" have cogent legal significance. In the context of the effect of prior decisions upon the substantiality of constitutional claims, those words import that claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render the claims of doubtful or questionable merit do not render them insubstantial for the purposes of 28 U.S.C. § 2281. A claim is insubstantial only if " 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy.' "

■ While plaintiff claims the Act violates certain provisions of the *Kentucky* Constitution, "[t]he 'unconstitutionality' clause of § 2281 can hardly be thought to encompass the voiding of a state statute for inconsistency with the *state* constitution." (Emphasis supplied.) *Swift & Co. v. Wickham,* 382 U.S. 111, 126 n. 25, 86 S.Ct. 258, 261, 15 L.Ed.2d 194 (1965). Therefore, our consideration will be limited to the claimed inconsistencies of the Act with the United States Constitution.

### FIFTH AND FOURTEENTH AMENDMENT CLAIMS

Plaintiff claims that the Act deprives him of liberty and property without due process of law and denies him equal protection of the law in violation of the Fifth and Fourteenth Amendments to the United States Constitution. Plaintiff's "property" interest is, of course, the business of posting bail for profit. Plaintiff's "liberty" interest is freedom of contract. The question which plaintiff advances as "constitutionally substantial" is whether the Kentucky legislature could, in the exercise of its police power, reasonably conclude that "outlawing" the bailbonding business would further the public welfare.

■ Generally speaking, "the police power extends to all the great public needs. . . . It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare." *Noble State Bank v. Haskell,* 219 U.S. 104, 111, 31 S.Ct. 186, 188, 55 L.Ed. 112 (1911).

In the preamble to the Act, the Kentucky legislature stated the motivating factors for its enactment. It found, *inter alia,* that "the people of . . . Kentucky by ratification of the Judicial Article mandated a reform in the administration of justice including the pretrial release of citizens charged with bailable offenses"; that "bail bondsmen have, in large part . . . reaped huge profits . . . to the detriment of the rights of many citizens and have been a major cause of corruption in the administration of justice"; and that "the present system has otherwise fostered wide-spread abuse of the laws and of the rights of the citizens of this Commonwealth through the corruptive influences of the bail bondsman in violation of the spirit of the Kentucky Constitution guaranteeing the equal administration of justice."

■ The Court is of the opinion that the unsoundness of plaintiff's claim that the Act deprives it of property without due process of law "so clearly results from the previous decisions of this court as to foreclose the subject." See *Ferguson v. Skrupa,* 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963), *overruling Adams v. Tanner,* 244 U.S. 590, 37 S.Ct. 662, 61 L.Ed. 1336 (1917), where the Court, in ruling that the State of

Kansas could prohibit non-lawyers from engaging in the business of "debt adjusting," said:

> We conclude that the Kansas Legislature was free to decide for itself that legislation was needed to deal with the business of debt adjusting. Unquestionably, there are arguments showing that the business of debt adjusting has social utility, but such arguments are properly addressed to the legislature, not to us. We refuse to sit as a "superlegislature to weigh the wisdom of legislation," and we emphatically refuse to go back to the time when courts used the Due Process Clause "to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought." Nor are we able or willing to draw lines by calling a law "prohibitory" or "regulatory."

*Id.* 372 U.S. at 731–32, 83 S.Ct. at 1032. See also *North Dakota State Board of Pharmacy v. Snyder's Drug Stores, Inc.,* 414 U.S. 156, 94 S.Ct. 407, 38 L.Ed.2d 379 (1973); *Daniel v. Family Security Life Ins. Co.,* 336 U.S. 220, 69 S.Ct. 550, 93 L.Ed. 632 (1949).

 Plaintiff's claim based on freedom of contract is also foreclosed. The United States Supreme Court has never gone "so far as to indicate that the due process clause bars a state from prohibiting contracts to engage in conduct banned by a valid state law." *Lincoln Federal Labor Union v. Northwestern Iron & Metal Co.,* 335 U.S. 525, 533–34, 69 S.Ct. 251, 255, 93 L.Ed. 212 (1949). Instead, the freedom of contract guaranteed by the due process clause must give way to statutes passed by the legislature in the valid exercise of its police power. *Chicago & Alton R. R. v. Tranbarger,* 238 U.S. 67, 76–77, 35 S.Ct. 678, 59 L.Ed. 204 (1915); *Atlantic Coast Line R. R. v. City of Goldsboro,* 232 U.S. 548, 558, 34 S.Ct. 364, 58 L.Ed. 721 (1914).

## IMPAIRMENT OF CONTRACT OBLIGATIONS

Plaintiff refers to "Article 1, Section 5" of the United States Constitution as the basis for this claim. Since that section obviously has no application to contractual rights, it is assumed plaintiff intended a reference to Article 1, Section 10 of that document which provides in part:

> No State shall . . . pass any . . Law impairing the Obligation of Contracts, . . .

Section (2) of the Act provides:

> Nothing contained herein shall serve to release any bail bondsman heretofore licensed by this state from the obligation of undischarged bail bond liability existing on the effective date of this Act.

Thus, by its terms the Act affects only *prospective* contract rights.

 It is well settled that the contract clause prohibits only statutes that impair *existing* contracts. *Munday v. Wisconsin Trust Co.,* 252 U.S. 499, 503, 40 S.Ct. 365, 64 L.Ed. 684 (1920); *Cross Lake Shooting and Fishing Club v. Louisiana,* 224 U.S. 632, 638, 32 S.Ct. 577, 56 L.Ed. 924 (1912).

 Even if this were not so, it is equally well recognized that the police power is:

> [A]n implied condition of every contract and, as such, as much [a] part of the contract as though it were written into it, whereby the State's exercise of its power enforces, and does not impair, a contract. . . . "[T]he . . . police power, is an exercise of the sovereign right of the government to protect the . . . general welfare of the people, and is paramount to any rights under contracts between individuals." . . . Once we are in this domain of the reserve power of a State we must respect the "wide discretion on the part of the legislature in determining what is and what is not necessary." . . . So far as the constitutional issue is concerned, "the power of the State when otherwise justified," . . . is not diminished because a private contract may be affected.

*East New York Bank v. Hahn,* 326 U.S. 230, 232–33, 66 S.Ct. 69, 70, 90 L.Ed. 34 (1945). See also *Home Building & Loan Ass'n v.*

*Blaisdell,* 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934); *Munday v. Wisconsin Trust Co., supra.*

., Furthermore, paragraph number 5 of the complaint alleges in part that:

> The contracts or undertakings under which Plaintiff enters into . . . is a contract between the Plaintiff and the Government . . . and the Defendant.

We assume that, if the state government is indeed a party to the contract, any freedom of contract guaranteed by the United States Constitution would allow it to refuse to contract with plaintiff if it chose to do so.

■ In any event, the Court is of the opinion that plaintiff's claim under Article 1, Section 10 is "constitutionally insubstantial" under previous decisions of the United States Supreme Court.

The Court notes that *Morehead v. New York,* 298 U.S. 587, 56 S.Ct. 918, 80 L.Ed. 1347 (1936), which plaintiff cites as authority for this claim, relied heavily on the reasoning of *Adkins v. Children's Hospital,* 261 U.S. 525, 43 S.Ct. 394, 67 L.Ed. 785 (1923), which was overruled by the United States Supreme Court in *West Coast Hotel Co. v. Parrish,* 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937). See also *Ferguson v. Skrupa, supra,* 372 U.S. at 731, 83 S.Ct. 1028. In *West Coast Hotel Co. v. Parrish, supra,* 300 U.S. at 392, 57 S.Ct. at 582, the Court quoted with approval the following passage:

> "[F]reedom of contract is a qualified, and not an absolute, right. There is no absolute freedom to do as one wills or to contract as one chooses. The guaranty of liberty does not withdraw from legislative supervision that wide department of activity which consists of the making of contracts, or deny to government the power to provide restrictive safeguards. Liberty implies the absence of arbitrary restraint, not immunity from reasonable regulations *and prohibitions* imposed in the interests of the community." (Emphasis supplied.)

## RIGHT TO BAIL

Plaintiff contends the Act violates the Eighth Amendment to the United States Constitution, which provides, in pertinent part, that "excessive bail shall not be required." Defendants' rejoinder is to question, *inter alia,* plaintiff's standing to raise this issue.

It is obvious that plaintiff does not seek to vindicate its right to be free from excessive bail. A corporation cannot go to jail. Rather, plaintiff seeks to continue in the bail bonding business.

However, the area of standing is not unlike a constitutional mine field. Normally, it is said that a litigant may assert only his own right or immunities. *United States v. Raines,* 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960). There are situations, however, in which litigants have been allowed to raise the rights of third parties. *Compare Tileston v. Ullman,* 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943), *with Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), and *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

■ Assuming, *arguendo,* that plaintiff has standing to raise the Eighth Amendment rights of present or future Kentucky prisoners, the assertion that the Act violates the right to be free from excessive bail is obviously without merit.

Section 4 of the Act provides:

(1) The amount of bail shall be:

 (a) sufficient to insure compliance with the conditions of release set by the court;

 (b) not oppressive;

 (c) commensurate with the nature of the offense charged;

 (d) considerate of the past criminal acts and the reasonably anticipated conduct of the defendant if released; and

 (e) considerate of the financial ability of the defendant.

(2) When a person is charged with an offense punishable by fine only the amount of the bail bond set shall not

exceed the amount of the maximum penalty and costs;

(3) When a person has been convicted of an offense and only a fine has been imposed the amount of the bail shall not exceed double the amount of the fine.

The Act sets limits on the amount of bail in certain cases and sets certain criteria to be considered in setting bail, most or all of which are now commonly considered by judges in setting the amount of bond, but, otherwise, the amount of bail is left to the court's discretion.

It is significant that plaintiff's brief on whether a substantial federal question is presented does not discuss this aspect of its claim. Under the circumstances of this case, plaintiff has no standing to raise this issue. *United States v. Raines, supra.* Alternatively, the Court finds this aspect of plaintiff's claim to be obviously without merit.

### SEPARATION OF POWERS

Plaintiff contends that, by prohibiting the courts from dealing with bail bondsmen, the Kentucky legislature has impermissibly infringed upon the powers of the judicial branch in violation of the doctrine of separation of powers.

This Court cannot be concerned, in determining the substantiality of plaintiff's claim under the United States Constitution, with whether the Act is "inconsistent with the state constitution." *Swift & Co. v. Wickham, supra,* 382 U.S. at 126 n. 25, 86 S.Ct. 258. This issue was not discussed in the Kentucky Supreme Court's opinion upholding the Act under the Fourteenth Amendment to the United States Constitution and § 1 of the Kentucky Constitution in *Stephens v. Bonding Association of Kentucky,* 538 S.W.2d 580 (Ky.1976).

Whether the Act violates the doctrine of Separation of Powers as expressed in Kentucky's statutes and Constitution is not a matter for inquiry under the United States Constitution. *Hughes v. Superior Court,* 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985 (1950); *Dreyer v. Illinois,* 187 U.S. 71, 23 S.Ct. 28, 47 L.Ed. 79 (1902). The only

question of Constitutional dimensions in this area, as plaintiff has noted, is whether the state, in distributing its powers, has acted "consistently with the essential demands of due process and does not transgress those restrictions of the Federal Constitution which are applicable to State authority." *Crowell v. Benson,* 285 U.S. 22, 57, 52 S.Ct. 285, 295, 76 L.Ed. 598 (1932). Since the Court has found plaintiff's claims based on these other Constitutional "restrictions" to be insubstantial, it follows that this basis for plaintiff's claim is obviously without merit.

### CONCLUSION

The Court having found that the issues raised in plaintiff's complaint are constitutionally insubstantial and/or obviously without merit, this action will be dismissed for lack of jurisdiction. *California Water Service Co. v. City of Redding, supra.*

The Court declines to assume pendant jurisdiction over the purely state claims involving the Kentucky Constitution. *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973).

An order in conformity with this opinion will be entered this even date.