Cheryl **BOETTI** and Ernest Maiero, Plaintiffs,

v.

**OGDEN SUFFOLK DOWNS, INC.,** et al., Defendants.

Civ. A. No. 84–959–C.

United States District Court, D. Massachusetts.

July 24, 1984.

Edward F. McDermott, Boston, Mass., for plaintiffs.

George I. Goverman, Alan R. Hoffman, Lynch, Brewer, Hoffman & Sands, Boston, Mass., for Ogden Suffolk Downs, Inc., Carrozzella and McLaughlin.

Jacqueline L. Allen, Asst. Atty. Gen., Boston, Mass., for Moseley and Furlong.

## MEMORANDUM

CAFFREY, Chief Judge.

This is a civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff alleges that the defendants acted individually and as members of a conspiracy to deprive plaintiff of her constitutional rights. Defendants move to dismiss.

The facts alleged in the complaint, which for purposes of the motions to dismiss must be taken as true, are as follows. On August 8, 1982, the fifth race of the day at Ogden Suffolk Downs ("Suffolk Downs") racetrack was a "claiming race." Prior to the start of a claiming race, each owner sets a claiming price for which he will sell his horse. Only owners of horses racing at the meeting are eligible to claim horses running in the claiming race. A person may claim a horse by dropping a written claim form into a designated box prior to the start of the race and by depositing the full amount of the claim with the racetrack bookkeeper. A claim is irrevocable, and title to the horse vests in the claimant from the time the horse enters the track.

Plaintiff entered her horse, Racquet Racket ("Racket"), in the claiming race and set a claiming price of $6,500. Ferdinand Dobras claimed the horse before the race. Racket finished second in the race, but, soon after the race, became unable to walk properly. Track officials took a urine specimen from the horse, in accordance with 205 C.M.R. § 4.41(7), which requires that all claimed horses be tested for the presence of excessive or unauthorized medication. Analysis revealed that the horse's urine contained 212 micrograms of phenylbutazone per millimeter, an amount in excess of the maximum 200 micrograms permitted by the Rules of Horse Racing as promulgated by the State Racing Commission. 205 C.M.R. § 4.41(19).

On August 13, 1982, the track's Board of Stewards held a hearing into the matter, and, as a result, assessed a fine of $250 against Racket's trainer. On August 15, 1982, Mr. Dobras, who had claimed the horse, learned of the phenylbutazone violation and formally disputed his claim to the horse. On September 3, 1982, the Board of Stewards convened another hearing to consider the protest and voted two-to-one to allow the protest. The Board ordered the horse returned to the plaintiff and the claiming price forfeited. Defendants Carrozzella and McLaughlin voted to allow the protest.

Plaintiff appealed the ruling to the Massachusetts State Racing Commission. Defendants Furlong, Farrell and Moseley were members of the Commission. After a full hearing, the Commission upheld the Board's decision. Plaintiff appealed the Commission's decision to Suffolk Superior Court. That court accepted the recommendation of a special master and affirmed the Commission's ruling.

Plaintiff alleges that the defendants, by their decisions as members of the Board of Stewards and State Racing Commission, deprived her of her constitutional rights under color of state law. The complaint raises serious and difficult questions of state action, see *Catrone v. Massachusetts State Racing Comm'n*, 535 F.2d 669, 671 (1st Cir.1976), and quasi-judicial immunity. However, even assuming the defendants are amenable to suit under § 1983, I rule that the complaint is manifestly frivolous and should be dismissed.

Plaintiff alleges in Counts I and II that defendants willfully and maliciously impaired her rights under the claiming contract, in violation of Article I, § 10 of the United States Constitution. Count III alleges that defendants conspired to impair plaintiff's rights under the contract.

■ Article I, § 10 of the Constitution provides that "[n]o State shall ... pass any ... Law impairing the Obligation of Contracts ...." The Contract Clause prohibits impairment of a contract by *legislation* enacted after creation of the contract. *See Kryger v. Wilson,* 242 U.S. 171, 177, 37 S.Ct. 34, 35, 61 L.Ed. 229 (1916). The Clause "is not directed against all impairment of contract obligations, but only against such as results from a subsequent exertion of the legislative power of the State." *Cross Lake Shooting and Fishing Club v. Louisiana,* 224 U.S. 632, 638, 32 S.Ct. 577, 579, 56 L.Ed. 924 (1912). It is only when a court "gives effect to a subsequent law of the State whereby the obligation of the contract is alleged to be impaired [that] a Federal question is presented." *Id.* at 638–39, 32 S.Ct. at 579–80.

The Massachusetts State Racing Commission is empowered "to prescribe rules, regulations and conditions under which all horse ... races ... shall be conducted in the commonwealth." M.G.L. c. 128A § 9. Racetrack Stewards "have the power to interpret the rules and to decide all questions not specifically covered by them." 205 C.M.R. § 4.44(1). The Stewards are empowered to pass on all disputed claims. 205 C.M.R. § 4.06(20).

Neither the Board of Stewards nor the State Racing Commission purported to apply new legislation to the claiming contract, nor to promulgate new rules or regulations. Both bodies interpreted existing regulations to call for rescission of the claiming contract.[1] The master's report, accepted by the Superior Court, found explicitly that the "decision of the [State Racing] Commission comports with the spirit and expressed intent of applicable law and regulations."

■ Because the Board of Stewards and the State Racing Commission lawfully interpreted existing state law to require rescission of the claiming contract, I rule that Counts I–III fail to state a claim under the Contract Clause. Accordingly, I rule that those counts should be dismissed.

Count IV should also be dismissed because the allegations contained therein are so vague and conclusory that they fail to state a claim for relief under § 1983. Plaintiff alleges that she entered another racehorse, "Wig Gala," in the fifth race at Suffolk Downs on March 24, 1984, more than a year and one-half after the events described in Counts I–III. Plaintiff alleges that "defendants Carrozzella and Ogden Suffolk Downs Inc. disqualified the horse from the race, without justifiable cause, and that their action was taken in reprisal for the claim of appeal which plaintiff undertook with respect to the voiding of the claim of ... 'Racquet Racket.'" Plaintiff also alleges that Suffolk Downs and defendant Carrozzella "have been engaged in an explicit and/or tacit conspiracy" to deprive plaintiff of her property interest in earning a living at Suffolk Downs.[2]

■ A plaintiff may, of course, prove a defendant's retaliatory state of mind and the defendant's membership in a conspiracy to retaliate through circumstantial evidence. *Ferranti v. Moran,* 618 F.2d 888, 892 (1st Cir.1980). Count IV, however, con-

---

**1.** The State Racing Commission reasoned that, because Racket had been drugged excessively, it was ineligible under the Rules of Horse Racing to be entered in the claiming race. On that basis, the Commission ruled that, although Racket ran in the race, title never actually passed to Mr. Dobras.

**2.** Count IV of the amended complaint adds Ernest Maniero as a party plaintiff. Maniero was the trainer for both Racket and Wig Gala. It is unclear from the complaint how disqualification of Wig Gala caused harm to Maniero, or how the disqualification impaired any contract to which he was a party. This Court's ruling that the complaint is too vague and conclusory to state a claim on the merits makes it unnecessary to consider Maniero's standing to sue.

tains only the most conclusory allegations of conspiracy and retaliation. Plaintiff has pleaded no facts linking the disqualification of Wig Gala to plaintiff's appeal of the Stewards' earlier decision. *See Leonardo v. Moran*, 611 F.2d 397, 398 (1st Cir.1979). Plaintiff alleges no objective facts whatsoever from which a jury might reasonably infer the existence of a conspiracy to retaliate.

I rule that plaintiff's bare allegations that defendants conspired to retaliate against her are, without factual support, insufficient to meet the pleading requirements in this Circuit, *see Slotnick v. Garfinkle*, 632 F.2d 163, 165 (1st Cir.1980); *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir.1977); *cert. denied*, 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978), and, accordingly, that Count IV should be dismissed for failure to state a claim on which relief can be granted.

Order accordingly.