Terri ARRIAGA, et al., Plaintiffs,

v.

MEMBERS OF the BOARD OF REGENTS, et al., Defendants.

Civ. A. No. 90–10985–WF.

United States District Court, D. Massachusetts.

March 23, 1992.

Carl Valvo, Cosgrove, Eisenberg & Kiley, Boston, MA, and Aaron Pearlman, Cosgrove, Eisenberg & Kiley, Quincy, MA, for plaintiffs.

Peter Sacks, Atty. Gen.'s Office, Boston, MA, for Members of the Bd. of Regents of Higher Educ., defendant.

### MEMORANDUM AND ORDER

WOLF, District Judge.

## I.  INTRODUCTION

Plaintiffs are students in Massachusetts public institutions of higher education who are not citizens of Massachusetts. They have brought this case seeking declaratory and injunctive relief against the Members of the Massachusetts Board of Regents of Higher Education (the "Regents") and the President and Trustees of various Massachusetts state colleges and universities. Plaintiffs challenge the constitutionality of retroactive increases for non-resident students for the Spring 1990 semester which resulted from certain legislation and related action by the Regents. More specifically, plaintiffs primarily assert that the retroactive increases impaired their contracts concerning tuition with the Commonwealth of Massachusetts in violation of the Contracts Clause of the United States Constitution, Article 1, § 10. Plaintiffs also assert that because the retroactive increases applied only to non-resident students, the conduct in question also violated the Privileges and Immunities Clause of the Constitution, Article IV, § 2. Defendants deny these contentions.

At the inception of this case, plaintiffs filed a motion to enjoin preliminarily the collection of the tuition increases. Defendants responded by filing a motion to dismiss, as well as by opposing the request for a preliminary injunction. The parties subsequently entered into a stipulation which made it unnecessary for the court to decide the motion for preliminary injunction. Proceedings concerning the motion to dismiss were suspended pending possible legislation repealing the retroactive tuition increases. Such legislation was passed by the State legislature, but vetoed by the Governor. Thus, the court held a hearing on the defendants' motion to dismiss.

With regard to the motion to dismiss, the court must accept the allegations of the complaint as true and determine whether the defendants are, nevertheless, entitled to judgment as a matter of law. In this case, with regard to the Contracts Clause, defendants present two related arguments. First, defendants claim that the retroactive tuition increases resulted from the actions of the Regents, rather than from the exertion of legislative power, and therefore the Contracts Clause is not implicated or violated. Second, defendants assert that to the extent that legislation caused the Regents to act to impose the retroactive tuition increases, such legislation was at most a direction to the Regents that they breach their alleged contracts with plaintiffs, permitting an action based upon state contract law, but not a Constitutional claim under the Contracts Clause.

As described below, the court concludes that plaintiffs' Amended Complaint properly alleges that the retroactive tuition increases constituted an impairment of contract resulting from the exertion of legislative power to implicate and violate the Contracts Clause. In addition, that legislation could be invoked as a defense to a breach of contract action and the fact that the State is now willing to waive this defense does not defeat plaintiffs' right to maintain in federal court an action alleging a violation of the Contracts Clause. Accordingly, defendants' motion to dismiss the plaintiffs' Contracts Clause claims must be denied.

As this case will continue on the Contracts Clause claims in any event, the court defers ruling on the request to dismiss the related Privilege and Immunities Clause claims.

## II. THE ALLEGED FACTS

The alleged facts, which for present purposes are accepted as true, include the following.

In November or December, 1989 or January 1990, each of the plaintiffs, none of whom are residents of Massachusetts, Amended Complaint ¶¶ 1–14, registered for the Spring 1990 semester at a Massachusetts institution of higher education. ¶ 48. At or prior to registration, each plaintiff either paid or agreed to pay the appropriate institution's posted non-resident tuition free. ¶ 49. At the time these agreements were entered into no mention was made of additional tuition charges. ¶ 51. According to the plaintiffs, the posted tuition "was and is a material factor in each student's decision to register at his or her respective institution." Id.

From the beginning of its 1990 fiscal year which began on July 1, 1989, the Commonwealth of Massachusetts "found itself in a severe budget difficulty." ¶ 52. By December 12, 1989, the House had passed a bill to amend the Fiscal Year 1990 Budget Act which provided among other things that:

> The board of regents shall develop a plan regarding tuition for students at Massachusetts public colleges and universities who are not Massachusetts residents. This plan shall ascertain the tuition that would be required to cover one hundred percent of the cost of enrolling said students; and further shall make recommendations for non-resident tuition adjustments effective January first, nineteen hundred and ninety. Said plan shall be filed, within thirty days of the effective date of this act, with House and Senate Committees on Ways and Means. The provisions of this section shall not apply to the tuitions for students in the New England Regional Student Program.

¶ 52.

The Chancellor of Higher Education and the Regents opposed this provision. ¶ 53. Among other reasons, the Regents believed it was unfair and that its discriminatory effect on non-residents would have an adverse impact on the quality of public higher education in Massachusetts. Id.

Although the bill had not yet become law, responding to what they interpreted as a legislative mandate, at their December 12, 1989 meeting, the Regents entertained a motion to raise non-resident tuition charges for the Spring 1990 semester on the condition that the increases become effective only upon enactment of the foregoing statutory amendment to the Fiscal Year 1990 Budget Act. ¶ 54. The Regents voted to adopt the motion, indicating in their official minutes that they did so as an exercise of their authority to establish tuitions under Massachusetts General Laws Chapter 15A, section 5(g), but "specifically due to the legislative mandate." ¶ 55.[1]

The provision to increase non-resident tuitions was subsequently passed by the Senate. It was signed into law by the Governor on January 4, 1990 as Section 176 of the Budget Control Act. ¶ 56. The tuition increases in the amounts voted by the Regents on December 12, 1989 then became effective without further executive action. Id.

In the middle of the Spring 1990 semester, each plaintiff received a bill with additional tuition charges of between $200 and $485 depending on the institution he or she attended. ¶ 57. The bills sent to the students attributed the tuition increases to legislative action. ¶¶ 57–58. For example the bill sent to University of Massachusetts students stated:

> THE LEGISLATURE RECENTLY INCREASED TUITION CHARGES FOR NON–RESIDENT STUDENTS, EFFECTIVE WITH THE SPRING 90 SEMESTER. THIS BILL REFLECTS THE INCREASE OF $485 FOR SPRING 90.

Amended Complaint, Attachment B. The bill sent to Salem State College students stated:

> MASSACHUSETTS GENERAL LAWS, CHAPTER 653, AN ACT ESTABLISH-

---

1. The text of this motion is Attachment A to the Amended Complaint. It provides that the additional charges were adopted "pursuant to Massachusetts General Laws Chapter 15A, Section 5(g)," but states that such charges would only "become effective upon enactment by the General Court of the Commonwealth," of the legislation at issue.

ING THE BUDGET CONTROL AND REFORM ACT OF 1989 WAS SIGNED INTO LAW. OUTSIDE SECTION 176 REQUIRES AN INCREASE IN TUITION FOR ALL NON-RESIDENT STUDENTS FOR THE SPRING 1990 SEMESTER. THIS BILLING REFLECTS THAT INCREASE OF $200 FOR ALL NON-RESIDENT SALEM STATE COLLEGE STUDENTS.

Amended Complaint, Attachment C.

Plaintiffs were told that non-payment of this additional fee would result in the usual penalties for non-payment of other tuition charges including: "removal from the rolls, inability to register for courses in the Fall semester, ineligibility for university housing, and the withholding of diplomas and transcripts." ¶ 59. These penalties could prevent students from graduating or transferring to other colleges or universities or pursuing graduate studies. *Id.*

The plaintiffs allege that "no plaintiff entered a contract for the Spring 1990 semester which permitted the college or university to unilaterally raise the plaintiff's tuition from time to time after registration up to final examinations, graduation or beyond." ¶ 62. The defendants dispute this. They maintain that the authority to raise tuition retroactively was established or preserved by various college and university catalogue provisions permitting the Regents to change tuition. However, for the purposes of the motion to dismiss the court must assume that, as plaintiffs allege, the students had contracts concerning tuition which did not permit the defendants to raise tuition retroactively.

### III. ANALYSIS

#### 1. *The Tuition Increases Resulted From the Exertion of Legislative Power.*

■ Article I, § 10 of the Constitution provides that, "No State shall ... pass any ... Law impairing the Obligation of Contracts." As its express terms indicate, the Contracts Clause is "not directed against all impairments of contract obligations, but only against such as results from a subsequent exertion of legislative power of the State." *Cross Lake Shooting and Fishing Club v. Louisiana*, 224 U.S. 632, 638, 32 S.Ct. 577, 579, 56 L.Ed. 924 (1912).

■ This prohibition applies to "every form in which the legislative power of a State is exerted, whether it be a constitution, a constitutional amendment, an enactment of the legislature, by a by-law or ordinance of a municipal regulation, or order of some other instrumentality of the State exercising delegated, legislative authority." *Ross v. Oregon*, 227 U.S. 150, 163, 33 S.Ct. 220, 223, 57 L.Ed. 458 (1913); *see also Grand Trunk W.R. Co. v. Railroad Com. of Indiana*, 221 U.S. 400, 403, 31 S.Ct. 537, 537, 55 L.Ed. 786 (1911); *United States v. Howard*, 352 U.S. 212, 216–17, 77 S.Ct. 303, 305–06, 1 L.Ed.2d 261 (1957). Nevertheless, some exercise of legislative power is essential to implicate the Contracts Clause. Thus, actions solely by executive officers affecting contractual rights would not, unless constituting the exercise of a delegated legislative function, involve a potential violation of the Contracts Clause. *New Orleans Waterworks Co. v. Louisiana Sugar Refining Co.*, 125 U.S. 18, 30, 8 S.Ct. 741, 747, 31 L.Ed. 607 (1888); *Smith v. Sorensen*, 748 F.2d 427, 436 (8th Cir.1984), *cert. denied*, 471 U.S. 1054, 105 S.Ct. 2116, 85 L.Ed.2d 480 (1985); *Boetti v. Ogden Suffolk Downs, Inc.*, 587 F.Supp. 1048, 1050 (D.Mass. 1984).

■ In the instant case, the retroactive tuition increases followed action by both the legislature and the Regents. It is, however, necessary and appropriate to conclude that the alleged facts of this case satisfy the requirement that the claimed impairment of contract "results from a subsequent exertion of legislative power of the State." *Cross Lake*, 224 U.S. at 638, 32 S.Ct. at 579. In this case, the legislation at issue not only motivated the Regents' action, but was the event which gave effect to the Regents' vote to raise non-resident tuition. The alleged facts indicate that, prompted by the foreseeable passage of the non-resident tuition legislation, the Regents devised a range of tuition increases which they in effect informed the Legislature and the Governor would be enacted and retroactively imposed if the pend-

ing legislation did indeed become law. The legislation was enacted and the tuition increases were assessed retroactively without further action by the Regents.

In what appears to be the only Supreme Court decision involving a hybrid of legislative and executive action such as that presented by the instant case, the Court indicated that it was "the effect of the enactment" which was controlling in determining whether the Contracts Clause was implicated. *Carondelet Canal & Navigation Co. v. Louisiana,* 233 U.S. 362, 375, 34 S.Ct. 627, 630, 58 L.Ed. 1001 (1914). In this case it is alleged that but for the legislation the non-resident tuition increases would not have been implemented for the Spring 1990 semester. The alleged effect of the legislation was to impose retroactive increases which would not have otherwise occurred. Thus, it can and must be fairly said that if a contract has been impaired, it has been impaired by an exertion of legislative power. *Id.*

Defendants contend, however, that prior to the enactment of the Budget Control Act, the Regents had the power under Mass.Gen.L. ch. 15A, § 5(g) to establish tuitions; that they explicitly indicated that they were exercising this power in raising non-resident tuitions; and, therefore, this dispute merely presents a claim for breach of contract, rather than a claim for a violation of the Contracts Clause. It is true that if without any legislative action the Regents had retroactively raised non-resident tuitions, plaintiffs would only have a claims under state law, for breach of contract. However, the fact that the State could have acted without implicating the Contracts Clause does not in this case immunize it from Constitutional claims based upon the manner in which it did in fact act.

■ Generally, it is well-established that the manner of State action, rather than the result, may provide the basis for a proper Constitutional claim. For example, the fact that the government has just cause to terminate a public employee who has a property interest in his or her job will not protect it from suit if the government has not afforded that employee a pre-termination hearing which satisfies the requirements of Due Pro-

cess. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

■ In the instant case, it is the manner of the alleged impairment of contract—by legislation rather than by executive action—that raises a Constitutional issue which may be litigated in federal court. This entitles plaintiffs to prevail on this aspect of the motion to dismiss.

2. ***The Fact That The Defendants Represent They Will Not Rely On The Budget Control Act As A Defense to A Breach of Contract Claim is Immaterial.***

Defendants represent that they will not rely on Section 176 of the Budget Control Act as a defense to any breach of contract action brought by plaintiffs in the courts of Massachusetts. Thus, defendants claim the legislation now at issue at most directed the Regents to breach their contracts with plaintiffs and, where the legislation will not be asserted as a defense in a suit for money damages, any breach does not constitute an "impairment" of a contractual "obligation" for Contracts Clause purposes. This claim, however, is without merit.

Defendants' argument relies heavily on the Court of Appeals for the Seventh Circuit's statement in *E & E Hauling, Inc. v. Forest Preserve District,* 613 F.2d 675, 679 (7th Cir.1980), that:

> The Supreme Court in the context of the contracts clause has drawn a distinction between a breach of contract and impairment of the obligation of the contract. The distinction depends on the availability of a remedy in damages in response to the state's ... action. If the action of a state does not preclude a damage remedy the contract has been breached and the non-breaching party can be made whole. If this happens there has been no law impairing the obligation of the contract. *Hays v. Port of Seattle,* 251 U.S. 233, 237[, 40 S.Ct. 125, 126, 64 L.Ed. 243] (1920)....

\* \* \* \* \* \*

Use of law normally will preclude a recovery of damages because the law will be a defense to a suit seeking damages unless it is clear the law is not to have that effect.

The foregoing observation does not, however, persuade this court that plaintiffs in the instant case have failed to allege an impairment of their contracts.

First, the court doubts that the Supreme Court today would find that the availability of an effective action for damages extinguishes a Contracts Clause claim. In a different context which may by analogy illuminate this issue, in 1977 the Supreme Court indicated that the "remedy/obligation distinction" is an "outdated formalism." *United States Trust Company v. New Jersey,* 431 U.S. 1, 19–20 n. 17, 97 S.Ct. 1505, 1516–17 n. 17, 52 L.Ed.2d 92 (1977). Rather, the Court indicated, the proper focus for Contracts Clause analysis is on whether subsequent state law has unreasonably and unnecessarily injured the "legitimate expectations" of the private contracting parties. *Id.* at 20–21 n. 7, 25, 97 S.Ct. at 1517 n. 7, 1519; *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 242–44, 98 S.Ct. 2716, 2721–22, 57 L.Ed.2d 727 (1978); L.H. Tribe, *American Constitutional Law,* at 620–24, § 9–11 (2d Ed.1988). Indeed, in *United States Trust Company,* the Supreme Court found a Contracts Clause violation where the legislation in question affected statutory covenants which had the effect of providing a certain degree of security for Port Authority bonds, but did not alter in any way the defendant's obligation to repay the bonds or the plaintiffs' right to sue for any breach of the loan agreements. *Id.* In doing so, the Court was plainly concerned with the reasonable expectations of the private parties to the contracts and with the practical effects of the legislation on their right to recover on any breach of contract, rather than with the creation of any new defenses to claims for breach of contract.

Similarly, the Court of Appeals for the Second Circuit recently held unconstitutional under the Contracts Clause a New York "lag-payroll" law, which deferred the wages of certain court employees contrary to the terms of their collective bargaining agreements. *Association of Surrogate & Supreme Court Reporters v. New York,* 940 F.2d 766 (2nd Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992). The Second Circuit concluded that the "lag-payroll" law substantially impaired New York's contractual obligations and was not reasonable or necessary to serve the important public purposes of expanding the state court system or managing a severe fiscal crisis in the state government. *Id.* at 771–74. As the Court reasoned, "[t]he contract clause, if it is to mean anything, must prohibit New York from dishonoring its existing contractual obligations, when other policy alternatives are available." *Id.* at 774.

In the instant case, the Amended Complaint alleges that the plaintiffs had contracts generating legitimate expectations that their tuition would not be raised retroactively; that in reliance on this material term they enrolled in Massachusetts colleges and universities; and they are threatened with forms of irreparable harm, as well as financial loss, as a result of the increased tuitions. In view of the decision in *United States Trust Company,* among other things, this court believes the plaintiffs have stated a claim for impairment of a contract in violation of the Contracts Clause.

This conclusion is, however, also consistent with the decision in *E & E Hauling.* In *E & E Hauling* an ordinance was enacted preventing the plaintiff from dumping waste at a landfill pursuant to a pre-existing contract. 613 F.2d at 680. The Court of Appeals for the Seventh Circuit found the complaint stated a cause of action under the Contracts Clause because:

If the plaintiff sued for damages for a breach of the contract the [Defendant] *could* claim that an ordinance prevents it from accepting [the waste]. In essence the ordinance would be a complete defense to a suit for damages. Only if that statute were declared unconstitutional could the plaintiff get a remedy for breadth of damages.

*Id.* (Emphasis added).

Similarly, in the instant case the defendants *could* defend any breach of contract action on the basis of the legislative decision to raise non-resident tuitions in a manner

which the lawmakers knew would, in pertinent part, operate retroactively. The fact that now that suit has been filed in federal court alleging a violation of the Contracts Clause the Attorney General and the defendants have decided as a matter of litigating strategy to waive a defense based on the statute, in an effort to eliminate federal jurisdiction, does not mean that plaintiffs have failed to state a valid Contracts Clause claim.

Rather, as indicated earlier, the focus of Contracts Clause analysis is whether the exertion of legislative power has had certain results. In this case the legislation at issue is a historic fact, which is unaffected by whether defendants now wish to rely upon that legislation in defending this action. Similarly, in deciding a motion to dismiss the court must focus on the allegations of the complaint alone. *Harper v. Cserr*, 544 F.2d 1121, 1122 (1st Cir.1976). Thus, defendants' present willingness not to rely on Section 176 of the Budget Control Act in defending this suit does not qualify the conclusion that plaintiffs have properly alleged a Contracts Clause claim.

## IV. *ORDER*

For the foregoing reasons, defendants' motion to dismiss plaintiffs' Contracts Clause claims is hereby denied and a decision on defendants' motion to dismiss the Privilege and Immunities Clause claims is deferred pending further proceedings in this case.