SHAWNEE SEWERAGE AND DRAINAGE COMPANY *v.* STEARNS, AS MAYOR OF THE CITY OF SHAWNEE.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF OKLAHOMA.

No. 109. Submitted March 14, 1911.—Decided April 10, 1911.

A simple breach of a contract by a municipality does not amount to an act impairing the obligation of the contract.

A statute authorizing the issuing of bonds for the purpose of constructing a public utility cannot impair the obligation of a contract made subsequent to the enactment of such statute.

The breach of a contract is neither confiscation of property nor the taking of property without due process of law. *St. Paul Gas Light Co.* v. *St. Paul,* 181 U. S. 145.

Where diversity of citizenship does not exist and plaintiff's claim is based on a simple breach of contract by a municipality, the case is not one arising under the contract or due process clause of the Constitution, and the Circuit Court has not jurisdiction.

Where the Circuit Court dismisses a bill on the merits, but it appears that jurisdiction did not exist, the decree must be reversed and the cause remanded with instructions to dismiss for want of jurisdiction. *McGilvra* v. *Ross,* 215 U. S. 70.

THE facts, which involve the jurisdiction of the Circuit Court of cases arising under the Constitution and laws of the United States, are stated in the opinion.

*Mr. B. B. Blakeney* and *Mr. James H. Maxey* for appellant.

*Mr. J. H. Everest, Mr. J. H. Woods* and *Mr. W. M. Engart* for appellee.

MR. JUSTICE McKENNA delivered the opinion of the court.

It is contended that this case involves the construction or application of the Constitution of the United States, and that therefore the appeal has been taken directly to this court from the Circuit Court.

The appellant, we shall call it the Drainage Company, is a corporation organized under the laws of Oklahoma; the appellees are the mayor, clerk and the members of the city council of the city of Shawnee, a municipal corporation. The Walter Newman Plumbing Company and Walter Newman are also appellees.

A summary of the facts as presented by the bill is as follows: The city of Shawnee, a city of the first class under the laws of the Territory of Oklahoma, granted by an ordinance (No. 228) to De Bruler-Newman & Company, their successors and assigns, the right, for the period of fifty years, to build and maintain a system of sewerage, with the necessary branches and appurtenances essential to the same, "along certain lines" in the city. It was provided that the city should have the right to purchase the system at the expiration of a period of fifteen years, at the exact cost of its construction. And further, that if the city did not desire to make the purchase the ordinance should run for fifty years. There was a time fixed for the commencement and completion of the system.

The ordinance was amended by a subsequent ordinance (No. 241) by making the term of the right twenty-one years and ratifying all the other provisions of the first ordinance.

On the first of February, 1902, De Bruler-Newman & Company assigned their rights under the ordinance to the

Drainage Company. The assignment was ratified by the
city by an ordinance (No. 242) passed February 26, 1902,
and the Drainage Company authorized to mortgage the
rights and properties in a sum not exceeding $25,000.00.
The ordinance also provided that the city should have
the right to purchase the system at the exact cost of its
construction or any extension of it after the expiration
of fifteen years.

De Bruler-Newman & Company commenced and con-
tinued the construction of the system until the assignment
to the Drainage Company as above stated, and after the
assignment the Drainage Company conducted its con-
struction "and extended its mains and laterals over and
throughout the limits" of the city and expended and in-
vested therein $40,000.00, and issued its bonds and notes
in pursuance of ordinance No. 242 and secured the sum by
a mortgage on the property and franchises. The company
performed its duties to the city, met all of the demands
for sewerage purposes, and carried out the terms and con-
ditions of the ordinance until the twenty-second of Decem-
ber, 1906, at which time it sold and transferred its main
line to the city. The company is the owner of the rest of
the property which is of the value of $30,000.00 and which
is regularly assessed and pays to the city its just property
taxes.

On the first of December, 1901, the city passed an
ordinance providing that wherever the system was ex-
tended "all over ground closets should be declared a
public nuisance," but after the company had extended the
system the ordinance was repealed, and the city has habit-
ually and systematically discouraged, and by divers means
has attempted, to impair the investment of the company.

On the sixth of November, 1906, after certain proceed-
ings had, a question was submitted to the voters of the
city whether bonds should be issued in the sum $165,000.00
for the construction of a sewer system, which was duly

carried. The Drainage Company then commenced a suit in the District Court of the county to enjoin the city from constructing and maintaining a sewer system in the city without having purchased the company's system or compensated it therefor, which suit was regularly tried and a decree rendered that the company had a legal and valid franchise, and that it "was authorized by such franchise to carry on the business of operating the said system of sewerage," and that the construction and operation of a sewer system by the city in the immediate vicinity of the company's system would confiscate its property and depreciate the value of the bonds thereon. The city was enjoined from constructing its system until the company's main sewer should be condemned or purchased by it, and, in the event that it should condemn or purchase the main sewer, the mayor and councilmen were enjoined from preventing the company "from connecting with any main sewer of the said defendant (the city) free of charge and to use the same by such connection with the district sewers and laterals" belonging to the company in operation at the date of the rendition of the decree.

The legality of the election at which bonds were authorized to be issued by the city to the amount of $165,000.00 was adjudged.

Subsequent to this decree, to-wit, on the third of March, 1907, the company and the city entered into a contract, Exhibit E, by which the company sold to the city all of its main line of sewer for the consideration of $6,900.00, it being provided that the city would recognize the company's rights to the laterals which were then laid in the city, and which were of the value of $30,000.00.

It was further provided that at such time as the city should be divided into sewer districts for the purpose of laying and constructing laterals in the districts, the city would cause the property of the company to be appraised by a commission, in case agreement could not be had as to

the price thereof. The price being fixed, the city was to "use all lawful means to tax up said laterals, at the price agreed upon to the abutting property, and deliver the tax warrants to the" company, which should "be in full payment for such laterals, in so far as the abutting property" was concerned. It was provided that the city should not be liable for the payment of the warrants, and that it did "not attempt to bind itself any further than warranted and permitted by law."

On the first day of June, 1908, the company, in order to comply with the contract above referred to, submitted to the city a proposition offering to relay and lower all of the laterals owned by it, to the depth required by the plans and specifications and under the directions of the city engineer and at his estimated cost, if any of the same were not of such depth, which offer was refused. The city, in disregard of the judgment in favor of the company and of the contract with it above referred to, entered into a contract with the Newman Plumbing Company (one of the appellees), by which the latter was granted a contract to lay the laterals necessary and desired by the city, "and in the vicinity and in the same streets and alleys which are now occupied by the laterals" of the company, and, unless enjoined, will proceed with the performance of the contract, and if it be performed the city will cause its citizens to connect with the laterals, because it must tax to build and maintain them, "and no other or further consideration would be required," and the citizens whose property is connected with the company's system would be taxed to maintain the system, whether connected with it or not, and its property, which is now of the value of $30,000.00, being wholly underground, would be worthless. The company is ready and willing to carry out its contract above referred to, (Exhibit E), and the citizens of the several sewer districts, are willing that their property be taxed as provided, but that the city, in disregard of the

contract, allowed the Newman Plumbing Company to build new, separate and independent laterals in the sewer districts.

The contract of March 3, 1907, between the company and the city was made in consideration of the city recognizing the rights of the company and the performance by the city of the matters agreed to be performed by it, which it has not done, "but for the purpose of confiscating" the company's "property and rendering it worthless and valueless, and in total disregard of its contract," has let the contract, as above mentioned, to the Newman Plumbing Company, although the laterals of the company "were, on the third day of March, 1907, adequate to accommodate connection" with the city's main sewer, and if the same are inadequate the company has offered and offers to make them adequate.

The city has refused to carry out the contract for the purpose of confiscating the company's property and of appropriating the same without due process of law, and that the contract with the Newman Company is void, as it impairs the obligation of the contract of the city with the company and is a confiscation of the company's property.

The city has attempted to assess the cost of the laterals laid by it upon the abutting property owners and the property of the company for the purpose of damaging the company and for no other purpose.

The contract (Exhibit E) was made by the city under the authority of an act of Congress, being the same under which the bonds for $165,000, above referred to, were issued, and its contract was in all respects legal and valid, and the company is entitled to have it enforced and the defendants (appellees) enjoined from violating it.

The company has no adequate remedy at law and is entitled to an injunction against violating the rights of the company, as set forth in the bill, and to have a mandatory

injunction, requiring the city "to conform to said contract
and said decree." The prayer of the bill is that the city
be enjoined from constructing laterals where the com-
pany's laterals "are situated and were situated on the
third of March, 1907, and from doing or performing any-
thing that tends to appropriate the property" of the com-
pany "without due compensation, or does impair the ob-
ligations of the contract of the parties, or deprive" the
company "of its property without due process of law."
General relief is also prayed.

There was a plea to the jurisdiction, stating as ground
thereof, among others, that the allegations of the bill did
not present a case of the violation of the Constitution of
the United States. A demurrer to the bill was also filed,
repeating the ground stated in the plea and setting forth
the further ground that the Drainage Company had "a
full, complete and adequate remedy at law." The bill
was subsequently amended by alleging specifically that
the amount involved was more than $2,000; and a tempo-
rary injunction was granted.

A general demurrer was filed to the amended bill for
want of equity, which was sustained, and the temporary
injunction dissolved and the bill dismissed.

No opinion was filed in the case, and the grounds upon
which the demurrer was sustained we can only collect
from the order allowing an appeal directly to this court
and from the assignments of error. By the latter the
action of the court is attacked as deciding that the ordi-
nance of the city granting the right to the Drainage Com-
pany to occupy the streets of the city "with its laterals,
mains and connections," the decree of the District Court
mentioned in the bill and the subsequent contract be-
tween the company and the city did not impair the ob-
ligations of the contract with the company, in violation
of the provisions of the Constitution of the United States,
and that the action of the city in tearing up the mains and

laterals of the company was not a confiscation of its property without due process of law.

These assignments, therefore, present the question for our decision, and it is these that counsel have discussed in their briefs. Appellant refers to the plea filed to the jurisdiction of the Circuit Court as follows: "The respondent (appellee) presented a plea to the jurisdiction of the court, . . . which plea was by the court duly overruled, but which question will probably be presented in this court."

To sustain the jurisdiction appellant advances the propositions, (1) that the city had the power to pass the ordinance by which it granted to appellant's predecessor and to appellant the franchise to construct a sewer system; (2) that the original franchise constituted a contract between the company and the city, and that this contract had been construed and adjudicated by the District Court of the Territory of Oklahoma as being exclusive and as prohibiting the city from building and maintaining a public sewer; (3) that the subsequent contract with regard to laterals was a valid contract, and that the contract with the Newman Plumbing Company to build a public sewer, as set out in the bill, impaired its obligation and appropriated and deprived the company of its property without due process of law. All these propositions, it is said, present Federal questions.

It is manifest that the stress of the case is upon the contract mentioned in the third proposition. The rights conferred by the ordinance were exercised for four years, and no interference with them is asserted except by the bond election of November 6, 1906. The purpose of the suit in the District Court of the Territory was to restrain the issue of the bonds on the ground that two-thirds of the voters had not voted for the same, and that the building of a public sewer system would affect and impair the rights of the company, much in the same way as detailed in the

bill in this case. There was no allegation of the impairment of the contract constituted by the ordinance. But it was alleged that the bond election was illegal and that under the laws of the Territory and the act of Congress applicable thereto the city had no power to construct a sewer system of its own under the circumstances detailed, and no authority under the law to in any manner destroy value of the company's property, or to confiscate the same, and to deprive the company of its vested rights and interests by virtue of the ordinance without just compensation.

It was prayed that the city be enjoined from issuing the bonds or causing a levy to be made upon the property of the company, or from doing anything which would tend to depreciate the property of the company.

It was decreed, as we have seen, that the Drainage Company had a legal franchise to build a sewer system, and that the construction by the city of a system in the immediate vicinity of the company's would confiscate its property and depreciate the value of the bonds thereof. But the bond election was declared legal, and that under the act of Congress of March 4, 1898, the city ought to issue the bonds as directed for the construction of sewers, among other purposes. The city, however, was enjoined from building or providing a sewerage system in the vicinity of that of the company until after it should purchase or condemn such system. It was further adjudged that in the event the city should condemn or purchase the main sewer of the company, it be enjoined from preventing the company from connecting with the main sewer free of charge, and to use the same by such connections for all district sewers and laterals belonging to the company in operation at the date of the rendition of the decree.

The rights of the parties as fixed by this litigation are clear. The company was adjudged to have a franchise to operate a sewer system and that under the franchise the company, "among other things, constructed a main

sewer" from and to certain points, "together with certain manholes, connections and bulkheads." It was valued at $6,900.00. The city's right to build a system was adjudged, but it was enjoined from building in the vicinity of that of the company. Its right to purchase or condemn the latter was recognized, but it was decreed that until such right should be exercised the city was enjoined from preventing the company from connecting all of its district sewers and laterals with the main sewer.

The rights of the parties thus being fixed by the decree, they entered into a contract in March, 1907, by which the city purchased the main sewer of the company and agreed to take over the laterals of the company in the way we have pointed out, to be paid by tax warrants, the city not binding itself for the payment in any way.

The city, it is alleged, has not attempted to comply with the contract, but, on the contrary, has made a contract with the Newman Plumbing Company to lay the laterals it desires. A simple breach of contract is, therefore, alleged on the part of the city. We are pointed to no law impairing the obligation of the contract. The statute under which the bonds were authorized to be issued is not such a law. It was passed before the contract was made. The breach of a contract is neither a confiscation of property nor a taking of property without due process of law. The case, therefore, comes within the principles announced in *St. Paul Gas Light Co.* v. *St. Paul,* 181 U. S. 145.

It is clear, therefore, that on the face of the bill the Circuit Court had no jurisdiction of the suit, there being no diversity of citizenship, and no real and substantial question arising under the Constitution of the United States being presented by the bill.

The bill was dismissed by the Circuit Court apparently on the merits. It should have been dismissed for want of jurisdiction. The decree, therefore, must be reversed

and the cause remanded to the Circuit Court with directions to sustain the demurrer for want of jurisdiction, and on that ground dismiss the bill.  *McGilvra* v. *Ross*, 215 U. S. 70, 80.

*So ordered.*