EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JOSÉ L. SOTO, MÁRSHAL DE LA CORTE MUNICIPAL DE SAN JUAN, SECCIÓN SEGUNDA, RAMÓN RODRÍGUEZ BABILONIA y PLÁCIDO MARTÍNEZ y su esposa CARMEN COLÓN DE MARTÍNEZ, demandados, y apelante el segundo.

Núm 7223.—*Sometido:* Abril 15, 1937. *Resuelto:* Abril 20, 1937.

*Luis Ríos Algarín,* abogado del apelante; *Hon. Procurador General B. Fernández García* y *Harry B. Llenza, Oficial Jurídico, División de Hogares Seguros,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

El Pueblo de Puerto Rico, representado por el Comisionado del Interior, en 23 de noviembre de 1929 cedió en arrendamiento a los cónyuges Plácido Martínez y Carmen C. de Martínez un solar radicado en el Barrio Obrero de San Juan. Los arrendatarios edificaron en el solar una casa de concreto, de un valor de mil dólares, dedicada a vivienda.

El contrato de arrendamiento se llevó a efecto de acuerdo con lo dispuesto por el artículo sexto, párrafo (*e*), de la Ley núm. 53 de 11 de julio de 1921 (pág. 387), tal como quedó enmendado por la Ley núm. 60 de 30 de abril de 1928 (pág. 467), que dice:

"(*e*) Que los solares asignados a solicitantes de acuerdo con esta Ley, y todas las construcciones levantadas en los mismos, no serán nunca objeto de embargo o hipoteca, u otros gravámenes de ninguna clase, y sólo podrán venderse o heredarse de acuerdo con las disposiciones de esta Ley; *Disponiéndose,* que este artículo no será aplicable a embargo o venta alguna efectuada, para obligar al pago de contribuciones, o al pago de cánones de arrendamiento adeudados."

En 10 de febrero de 1934, los esposos Martínez constituyeron hipoteca sobre la casa, a favor del demandado Ramón Rodríguez Babilonia, en garantía de la suma de $160 y de un crédito adicional de $40 para el caso de ejecución. El acreedor hipotecario radicó demanda ante la Corte Municipal de San Juan, para la ejecución de la ameritada hipoteca. Anunciada la subasta de la casa para el día 8 de octubre de

1935, El Pueblo de Puerto Rico acudió a la Corte de Distrito de San Juan en solicitud de un auto de *injunction* para impedir que se llevara a efecto la subasta y suspender los procedimientos ejécutivos.

La demanda se basa en la alegada nulidad de la hipoteca y del embargo trabado por el márshal de la corte municipal; y en la alegación de que la celebración de la subasta ocasionaría una multiplicidad de procedimientos judiciales.

Decretado el entredicho de los demandados y requeridos éstos para mostrar causas por las cuales no debiera expedirse el *injunction* solicitado, compareció el demandado Ramón Rodríguez Babilonia y negó específicamente, por carecer de informes suficientes, los hechos esenciales de la petición. Radicó además una moción para que se declare la nulidad del artículo sexto, párrafo (e), supra, por ser anticonstitucional y contrario a las disposiciones del párrafo 5 del artículo 2 de la Ley Orgánica de Puerto Rico, *"por menospreciar dicha disposición legal el valor de los contratos y la libre contratación que están garantizados por nuestra Carta Orgánica y por la Constitución de los Estados Unidos de Norteamérica."*

Por estipulación de las partes, en la que el demandado admitió los hechos de la demanda, el caso fué sometido a la corte inferior para su resolución en cuanto a la cuestión levantada sobre la constitucionalidad del citado estatuto.

En 18 de noviembre de 1935, la corte de distrito decretó el *injunction* preliminar, sosteniendo que el precepto legal impugnado es constitucional. El demandado Ramón Rodríguez Babilonia interpuso el presente recurso.

El propósito fundamental del artículo 1, sección 10, cláusula 1 de la Constitución Federal y del párrafo 5 del artículo 2 de la Ley Orgánica de Puerto Rico, al prohibir que se pongan en vigor leyes que menoscaben las obligaciones contraídas por virtud de los contratos, es el de proteger a las partes contratantes, que han pactado sus respectivas obligaciones contractuales al amparo de la legislación vigente en

la fecha de la celebración del contrato, contra el efecto retroactivo que por disposición legislativa o por interpretación judicial se dé o se trate de dar a alguna ley aprobada con posterioridad a la fecha de la celebración del contrato.

La ley de cuya constitucionalidad se trata fué aprobada el 11 de julio de 1921 y enmendada en 30 de abril de 1928. El solar del Pueblo de Puerto Rico fué cedido a Plácido Martínez en noviembre de 1929, bajo las condiciones especificadas en el artículo sexto, párrafo (e), supra. Esa era la ley vigente y obligatoria para las partes contratantes cuando éstas celebraron el contrato de hipoteca de 10 de febrero de 1934, cuyas obligaciones se alega han sido menoscabadas por dicha ley. Al otorgarse la hipoteca, el demandado Ramón Rodríguez Babilonia sabía, por disponerlo así la ley vigente y el título de su deudor, que éste no tenía derecho alguno a hipotecar el solar, ni las edificaciones levantadas en el mismo. El contrato de hipoteca era nulo desde el momento en que se celebró, por haber sido otorgado en contravención de un estatuto que ya estaba en vigor. La alegación de que ese estatuto menoscaba las obligaciones del contrato de hipoteca carece en absoluto de fundamento. Para que una ley pueda ser declarada anticonstitucional, por menoscabar las obligaciones de un contrato, son requisitos indispensables que haya sido aprobada con posterioridad a la fecha del contrato y que se trate de aplicarla retroactivamente. En el caso sometido a nuestra consideración no se han cumplido esos requisitos. Véanse: *Denny* v. *Bennett*, 128 U. S. 489; *Brown* v. *Smart*, 145 U. S. 454; *Diamond Glue Co.* v. *U. S. Glue Co.*, 187 U. S. 611; *Blackstone* v. *Miller*, 188 U. S. 189; *Cross Lake Shooting, etc. Club* v. *Louisiana*, 224 U. S. 632; *Shawnee Sewerage Co.* v. *Stearns*, 220 U. S. 462; *Detroit United Railway* v. *Michigan*, 242, U. S. 238.

 Alega además el apelante que la ley es contraria al derecho constitucional que tiene todo ciudadano a disponer libremente de sus bienes; que es una ley de privilegios, por

referirse solamente a aquellas personas que tienen su hogar seguro (*homestead*) en terrenos del Pueblo de Puerto Rico; y por último, que es inmoral porque permite al dueño de tal *homestead* tomar dinero a préstamo, en la seguridad de que su propiedad no podrá ser ejecutada para hacer efectiva su obligación.

La jurisprudencia citada en el alegato del apelante no es aplicable al caso de autos. Las decisiones citadas sostienen que la Legislatura de un estado no puede prohibir al dueño de un *homestead* que lo enajene o lo hipoteque voluntariamente, aunque sí puede prohibir la venta forzosa del inmueble. En los casos citados la persona que hipotecó o vendió el inmueble era dueño absoluto del mismo, sin que en su título de adquisición constasen cláusulas o estipulaciones restrictivas de su derecho a disponer libremente del inmueble o a hipotecarlo. El caso de autos presenta una situación completamente distinta.

La Legislatura de Puerto Rico, en ejercicio de la facultad "para decretar leyes para la protección de la vida, salud y seguridad de empleados y obreros," expresamente otorgádale por el artículo 2, párrafo 10, de la Ley Orgánica, aprobó en el año 1921 la Ley núm. 53 (Leyes de 1921, pág. 387), cuyo fin principal era la organización y sostenimiento de un Barrio Obrero en la ciudad Capital, donde las familias de empleados y obreros pudieran establecer sus hogares, protegidos y amparados contra los reveses de la fortuna y las ambiciones de los prestamistas. A esos fines dedicó El Pueblo de Puerto Rico los terrenos públicos en donde radica en pleno desarrollo el Barrio Obrero de San Juan. Se reservó El Pueblo el dominio de los solares y concedió a los peticionarios de los mismos el derecho a usufructuarlos por vida. Y para asegurarle a los concesionarios el goce y disfrute del solar y de la vivienda que en el mismo se construyese, dispuso la ley que ni el solar ni la casa podrán ser embargados, hipotecados o en alguna otra forma gravados. Aceptaron los concesio-

narios esa restricción que les impuso la ley y que forma parte de su contrato con el Gobierno; y bajo esas condiciones se edificó la casa objeto del presente litigio.

No es el concesionario quien comparece ahora ante nos a reclamar y defender su derecho para contratar libremente. Quien invoca ese derecho es el prestamista.

El apelante no puede alegar sorpresa ni desconocimiento de las restricciones existentes en el título de su deudor. Contrató con él a sabiendas de que la ley y su contrato con el Gobierno prohibían la constitución de un gravamen hipotecario sobre el hogar de la familia del obrero. Plácido Martínez.

Las restricciones impuestas por la ley y por la concesión del solar son, a nuestro juicio, justas, razonables y absolutamente necesarias para el éxito y para la existencia misma del Barrio Obrero de San Juan. Y la consecuencia de la declaración de nulidad que se solicita sería tal vez lanzar a la calle a innumerables familias, que hoy viven en su propio hogar, convirtiendo el Barrio Obrero en campo de explotación de esas mismas familias, obligadas a convertirse en inquilinos de los prestamistas.

El argumento de que la ley es inmoral porque permite la contratación de un préstamo y prohibe la hipoteca que lo garantiza, es por demás falaz. El que presta dinero al dueño de una casa edificada en solares del Barrio Obrero, bajo las condiciones del presente caso, lo hace a sabiendas de que el prestatario no puede ofrecerle garantía hipotecaria. No puede, por tanto, llamarse a engaño si se decreta la nulidad de su garantía. La obligación de devolver el importe del préstamo subsiste. Lo que no existe ni ha existido nunca es la hipoteca que se trata de ejecutar.

*Debe confirmarse la orden apelada.*