OPINION OF THE COURT
Eugene R. Wolin, J.
This action involving a contract to repair the Outerbridge Crossing, was tried by the court and jury in January, 1979 and the jury returned a verdict in favor of the plaintiff in the amount of $92,672. The plaintiff now moves for the following relief:
To amend the caption to reflect the true corporate name of the defendant; to fix the date from which interest is to be computed; and finally, to declare chapter 585 of the Laws of 1939 which limits interest on claims against public corporations to 4% to be unconstitutional.
As to the first two branches of the motion there is no opposition and indeed little is possible. Defendant raised a spirited defense throughout the trial and could not now argue that a change in the caption would prejudice its right. As for the date of accrual of the claim, the date sought, June 13, 1967 was acknowledged by the Appellate Division in a prior appeal in this action (Ardsley Constr. Co. v Port of N. Y. Auth., 52 AD2d 794) to be the correct date. Therefore these two branches of the motion, are granted.
As to the third branch of the motion, plaintiff argues that the limitation of 4% interest on contract claims is both a denial of plaintiff’s right to equal protection of the law and a taking of plaintiff’s property without just compensation in derogation of the due process clauses of both the Federal and State Constitutions. In support of this argument, plaintiff has cited numerous cases in the condemnation and eminent domain area but neither counsel’s research nor the court’s has revealed any reported decision involving a contract claim which addresses the issues raised by the instant motion.
*947 THE EQUAL PROTECTION CLAIM
By virtue of its status as a public corporation (Copeland Constr. Co. v Port of N. Y. Auth., 64 Misc 2d 436), defendant claims the benefits of chapter 585 of the Laws of 1939 which limits the rate of interest to be paid upon any judgment or accrued claim to 4%. It is the position of plaintiff that this limitation creates an invidious classification in violation of its constitutionally protected rights. Plaintiff points to a 1971 amendment to section 16 of the State Finance Law (L 1971, ch 874) which increased the rate of interest on all claims against the State from 4% to 6% and an amendment to section 3-a of the General Municipal Law (L 1969, ch 1102) which increased the rate of interest in condemnation actions from 3% to 6%. Plaintiff also places great reliance upon the decision of the Trial Term in the Matter of City of New York (Manhattan Civic Center Area) (57 Misc 2d 156, affd 32 AD2d 530, affd without opn 27 NY2d 518). That action arose in response to the city’s condemnation of property, and the court found that the rate of interest set by section 3-a of the General Municipal Law was unconstitutional.
At the time those actions were brought, the rate of interest for condemnation actions brought by the State was 6% whereas, in actions brought by the city the rate was only 4%. The trial court ruled, and was affirmed on appeal, that no rational governmental purpose could be served by such a distinction, and that to allow the State to create such a classification between essentially identical claimants, was an arbitrary and capricious use of the State’s power. The court also held that the limitation of interest in a condemnation action would deprive the owner of his property without just compensation and thus violates the due process clause.
 It is axiomatic that the State may create classifications which are reasonably related to a valid object of legislation that courts will allow the Legislature wide discretion in fashioning such classifications. (Allied Stores of Ohio v Bowers, 358 US 522; Fifth Ave. Coach Co. v New York, 221 US 467; Aerated Prods. Co. of Buffalo v Godfrey, 290 NY 92; Rapid Tr. Corp. v New York, 303 US 573.) The courts have also held that the question of constitutional validity disappears when it cannot be said that no state of facts reasonably justifying the classification can be conceived. (Matter of 436 W. 34th St. Corp. v McGoldrick, 288 NY 346; Rapid Tr. Corp. v New York, supra.) The burden rests with one who chai *948 lenges the classification to show that it does not rest upon any reasonable basis but that it is palpably arbitrary and capricious. (Harman v Board of Educ., 300 NY 21.) Thus although plaintiff argues that the classification established by the statute inhibits his full enjoyment of property rights and therefore must be given strict scrutiny by the courts (cf. San Antonio School Dist. v Rodriguez, 411 US 1), courts of this State have held that in cases involving municipalities or public corporations the "sovereign and public character of the favored debtors and the lower rates of interest usually applicable on their borrowings may well form a basis for differentiation.” (Matter of City of New York [Bronx Riv. Parkway], 284 NY 48, 54, affd 313 US 540.) Plaintiff argues that any distinction based merely upon the nature of the underlying claim, i.e., whether it is a condemnation or a breach of contract action, is irrational. This is based upon the premise that the appropriate class is one composed of all parties who have a claim against a public corporation. Thus to divide this larger class into those proceeding upon a condemnation claim and those seeking damages for a breach of contract and to allow a greater rate of interest to the claims of one ground is an artificial distinction and presumptively arbitrary and capricious. The court cannot agree. It was within the discretion of the Legislature to set the rate of interest for claims against public corporations. Although there have been several cases in the condemnation area which have held that a limitation as between different classes of owners whose property has been condemned, is a denial of equal protection (Matter of City of New York [Manhattan Civic Center Area] 27 NY2d 518, supra) the constitutionality of a statute setting the maximum rate of interest of such claims has been upheld against a challenge based on equal protection grounds. (Matter of City of New York [Bronx Riv. Parkway], supra; Matter of Port Auth. Trans-Hudson Corp. [Hudson Tubes Purposes] 20 NY2d 457, cert den 390 US 1002.)
The reliance which plaintiff places upon Matter of City of New York (Manhattan Civic Center Area) (supra) and City of Buffalo v Clement Co. (28 NY2d 241) is misplaced. In each case the court based its findings on a denial of equal protection upon the differing rates of interest allowed to property owners depending upon which governmental unit was involved. The courts held, that any distinction or classification was therefore artificial and would not serve any legitimate *949 purpose. These decisions do not stand for the position that the State may not validly fix the rate of interest on these claims nor can it be intended that such classification is inherently suspect. The infirmity in the prior legislation was that it created invalid distinctions between parties who were seeking relief for essentially an identical claim, i.e., condemnation actions. The decisions cited by counsel do not compel a finding either that such legislation is beyond the power of the Legislature or that the class proposed by plaintiff, i.e., all persons having claims against a public corporation is the appropriate one. Plaintiff argues that the failure of the Legislature to amend chapter 585 of the Laws of 1939 at the same time section 16 of the State Finance Law was amended to increase the rate of interest, was an inadvertent error and should not influence this court. However, it is not for this court to impute such an error to the Legislature. Statutes should be construed to support their constitutionality and certainly it would be within the power of the Legislature to establish or create the terms and conditions upon which the State or public corporations would be subject to suit. The establishment of the rate of interest for claims against a public corporation insofar as that rate differs from the rate established for condemnation actions could be based upon the Legislature’s reasonable determination that a public, corporation should have a favored status under the law. Therefore, any classification which is created by chapter 585 of the Laws of 1939 is not palpably arbitrary and capricious and the distinction made between condemnation proceedings and actions for breach of contract does serve a rational governmental purpose and it is therefore immune from attack as a denial of equal protection.
THE DUE PROCESS CLAIM
Plaintiff’s argument with regard to its due process claim stands upon a different footing from its equal protection claim. Plaintiff argues in essence that damages accruing upon a breach of contract constitute a chose in action and are thus a property sufficient to satisfy the due process clause. Interest must be paid on such a claim at a sufficiently high rate to compensate plaintiff for the loss of his property, i.e., to adequately compensate plaintiff for the delay in payment of a just claim. It is plaintiff’s position that payment of interest at the statutory rate of 4%, rather than at the rate of 6%, is a *950 taking of plaintiffs property in derogation of plaintiffs right of due process under both the Federal and State Constitutions.
Plaintiff bases his position upon certain language in Danolds v State of New York (89 NY 36, 46): "These contracts were protected, not only under the constitutional provision referred to, but the right to these prospective profits, any advantage of value under them, was a species of property finding protection under both the Federal and State Constitutions, in the provisions that private property shall not be taken for public use without just compensation.”
Danolds however did not expressly address the point at issue here. In Danolds the plaintiff sued to recover for prospective profits due when the State unlawfully terminated a contract to construct the Elmira Reformatory. The decision in Danolds turned upon whether a statute holding the State harmless for prospective profits was an impairment of contractual obligations and thus violative of the contract clause in the Federal Constitution. The court held that when the sovereign engages in business and enters into contracts with private individuals that its rights and obligations must be determined as if the contracting parties were private citizens. (Danolds v State of New York, supra, p 44.) The court found that prospective profits were a valuable right, a chose in action and a vested property right which belonged to the plaintiff of which he could not be deprived. Under the court’s reasoning the impact of the challenged statute would be to allow the State to require full performance by the contractor yet hold the State harmless when it breached the contract. The Danolds.court held that under the rationale of Fletcher v Peck (6 Cranch [10 US] 87), such a statute would violate the contract clause of the Federal Constitution. Danolds therefore was a decision which delineated the obligations of the State when it entered into contracts and the broad language relied upon by plaintiffs counsel should not be taken out of the factual context of the case. Prospective profits have long been held to be recoverable in breach of contract actions (Wakeman v Wheeler & Wilson Mfg. Co., 101 NY 205), and the determination that such profits were a vested property right cannot be extended to include every element of the measure of damages incident to a breach of contract. As Danolds recognized, statutory denial of prospective profits would be an impairment of the right to contract but it does not follow from this premise that every breach of contract would offend consti *951 tutionally protected rights. While a statutorily created immunity from liability would impair contractual obligations, a mere breach of contract neither impairs contractual obligations nor constitutes a taking of property sufficient to satisfy the due process clause of the Federal Constitution. (Shawnee Sewerage & Drainage Co. v Stearns, 220 US 462.) Thus although the court in Danolds speaks in terms of property rights it is clear that the decision rests upon the constitutional guarantee of freedom of contract and cannot be read for the proposition that all damages incident to a breach of contract are constitutionally protected. Nothing in chapter 585 of the Laws of 1939 impairs plaintiff’s ability to recover for breach of contract and loss of profits and thus there can be no genuine issue under the contract clause.
Absent any impairment of contractual obligations, for plaintiff to succeed it must establish that the establishment of the 4% interest rate constituted a taking of its property without just compensation. However, as the breach of contract which gives rise to the damages does not constitute a taking of property (Shawnee Sewerage & Drainage Co. v Stearns, supra), this court cannot allow rights incident to the recovery for breach of contract to acquire greater protection than those accorded the underlying action. Plaintiff’s property right was in the compensation for work performed under the contract and not in the interest rate to be paid on the claim. Therefore if a denial or delay in compensation in a breach of contract action does not constitute a taking of property there can be no constitutionally protected, vested property right which will be taken if a plaintiff is compensated at a lower rate of interest. Certainly plaintiff cannot argue that the State could not set the maximum rate of interest on claims against it and that such a statute would be unconstitutional. Rather plaintiff argues that there is' a taking without just compensation in that a rate of interest of 4% on its recovery is inadequate to compensate plaintiff fully for the delay in payment of its claim. This is premised upon plaintiff’s confusion of the property rights protected by the contract clause and what is necessary to satisfy a taking under the due process clause. Even assuming that plaintiff’s property was taken, however, the court cannot say that the 4% rate is unreasonable. While the determination of the proper rate of interest is a judicial function, cases in this area have held that a rate of interest established by statute is presumptively reasonable and in the *952 absence of evidence sufficient to rebut that presumption, should be applied by the courts. (City of Buffalo v Clement Co., 28 NY2d 241, supra; Futia Co. v Schenectady Municipal Housing Auth., 33 AD2d 591; Toomey v New York City Tr. Auth., 10 AD2d 728, affd without opn 8 NY2d 970.)
Therefore the court finds that plaintiff has failed to establish that its constitutionally protected rights under the due process and equal protection clauses were violated. The court finds that chapter 585 of the Laws of 1939 is constitutional, that it did not create an invidious classification, nor did the establishment of the maximum rate of interest of 4% on claims constitute a taking of plaintiffs property.
Those branches of plaintiffs motion to establish June 13, 1967 as the date of the accrual of the claim and to amend the caption to reflect the proper name of the defendant as the Port Authority of New York and New Jersey are granted; that branch of the motion seeking to declare unconstitutional chapter 585 of the Laws of 1939 is denied and plaintiff shall have judgment against defendant for $92,672 with interest at the rate of 4% from June 13, 1967.