214 F.3d 344 (2nd Cir. 2000)
 TM PARK AVENUE ASSOCIATES, Plaintiff-Appellee,
W.E.A. ASSOCIATES, and JOHN HANCOCK MUTUAL LIFE INSURANCE CO., Plaintiffs-Intervenors-Appellees,
v.
GEORGE PATAKI, Individually and as Governor of the State of New York, CARL H. McCALL, Individually and as the Comptroller of New York State,NEW YORK STATE DEPARTMENT OF AUDIT & CONTROL, STATE UNIVERSITY OF NEW YORK, FREDERICK SALERNO, Individually and as Chairman of the Board of Trustees of the State University of New York, BOARD OF TRUSTEES OF THE STATE UNIVERSITY OF NEW YORK, THOMAS A. BARTLETT, Individually and as Chancellor of the State University of New
York, NEW YORK STATE DORMITORY AUTHORITY, THE STATE OF NEW YORK, LONNIE CLAR, Individually and as Associate Counsel to the State University of New York, and IRVING FREEDMAN, Individually and as Vice Chancellor of Capital Facilities of the State University of New York and General Manager of the State University Construction Fund, Defendants-Appellants.
 Docket No. 99-7479
August Term, 1999
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: December 16, 1999
Decided: June 05, 2000
 
 Appeal from a decision of the Northern District of New York, McAvoy, C.J., finding that Chapter 312(4) of the 1995 Laws of New York violates the Contract Clause of the United States Constitution by impairing a lease between the State University of New York and TM Park Avenue Associates.
 Vacated and remanded.
 
 
 1
 VICTOR PALADINO, Assistant Attorney General, State of New York, Albany, NY (Eliot Spitzer, Attorney General, Peter H. Schiff, Deputy Solicitor General, Peter G. Crary, Gina Ciccone, Assistant Attorneys General, State of New York, Albany, NY, of counsel), for Appellants.
 
 
 2
 DAVID J. MARK, Rosenman & Colin, New York City, for Appellee W.E.A. Associates.
 
 
 3
 P. Bradley O'Neill, Debevoise & Plimpton, New York City, for Appellee John Hancock Mutual Life Insurance Co.
 
 
 4
 Deborah F. Howitt, Murphy, MacKenzie, Michaels & Sullivan, Boston, MA, for Appellee TM Park Avenue Associates.
 
 
 5
 Before: MESKILL, JACOBS and LEVAL, Circuit Judges.
 
 MESKILL, Circuit Judge:
 
 6
 Defendants-appellants, New York State Dormitory Authority and various state officials (collectively "SUNY") appeal the decision of the United States District Court for the Northern District of New York, McAvoy, C.J., holding that a New York statute, Chapter 312(4) of the 1995 Laws of New York, violates the Contract Clause of the United States Constitution. The district court found that the legislation impaired SUNY's lease with plaintiff-appellee, TM Park Avenue Associates (TM Park). For the reasons that follow, we vacate the portions of the district court's judgment dealing with ripeness and the Contract Clause claim. We order the district court to make no ruling on TM Park's claims pending resolution of a breach of contract action between the parties in the New York Court of Claims.
 
 BACKGROUND
 
 7
 TM Park owns a building on the corner of 24th Street at 315 Park Avenue South in New York City. In April 1986, TM Park entered into a long-term lease with SUNY whereby approximately 70 percent of the premises would be used by the SUNY College of Optometry. The lease expires on July 31, 2004. Pursuant to N.Y. State Fin. Law § 41 (McKinney 1997), the lease contains an executory clause which provides:
 
 
 8
 This contract shall be deemed executory only to the extent of money available to the State for the performance of the terms hereof and no liability on account thereof shall be incurred by the State of New York beyond moneys available for the purpose thereof.
 
 
 9
 In addition to rent, SUNY is responsible for real estate taxes, which together represent a significant portion of the College of Optometry's operating budget. Plaintiffs-intervenors John Hancock Mutual Life Insurance Company (Hancock) and W.E.A. Associates (W.E.A.) hold a first and second mortgage on the property, respectively, and have security interests in the lease. SUNY has entered into various subordination, non-disturbance and attornment agreements with Hancock and W.E.A. which provide, in part, that SUNY will not terminate or modify its lease without the written consent of the mortgage holders.
 
 
 10
 In the late 1980s and early 1990s, the New York City real estate market collapsed. As a result, SUNY was paying above-market rent for the space. SUNY began exploring various ways to cut costs. In 1994, the City University of New York (CUNY) sought legislative appropriations to move its New York City Graduate School and University Center from a building on 42nd Street to the B. Altman Building. CUNY intended to consolidate other operations in the 42nd Street building. The New York Division of Budget suggested instead that the SUNY College of Optometry relocate to the 42nd Street building. In early 1995, CUNY and SUNY agreed and drafted a joint proposal requesting appropriations for the relocation. During the 1995 legislative session, Chapters 312 and 313 became law. Chapter 312(4), at issue here, provides:
 
 
 11
 Notwithstanding any other provision of law, no appropriation shall be available on and after July 1, 1996, or as soon thereafter as the state university college of optometry shall complete relocation to facilities owned and financed for public purposes, for funding support for privately or commercially leased building space for state university college of optometry operations at 100 East 24th Street/315 Park Avenue South, in New York City, to reflect the elimination of such funding support due to fiscal deficiencies and unavailability of funds.
 
 
 12
 Chapter 313 provided relocation funding and money for CUNY to purchase the B. Altman Building. Because SUNY has yet to relocate, the effect of this legislation on the lease in question has not been triggered.
 
 
 13
 On October 16, 1995, TM Park brought this action in the Northern District of New York. TM Park sought a declaratory ruling that Chapter 312(4) violated the Contract Clause of the United States Constitution. It also claimed that the legislation violated the Fourteenth Amendment by effecting a "taking" of its property without due process of law and just compensation. TM Park alleged that these constitutional violations were cognizable under 42 U.S.C. § 1983 and sought attorney's fees. Hancock and W.E.A. were permitted to intervene on November 15, 1996. They joined in TM Park's allegations and also claimed that the legislation impaired their agreements with SUNY.
 
 
 14
 On July 21, 1997, after substantial discovery, plaintiffs moved for summary judgment on their Contract Clause claim and, in the alternative, for a preliminary injunction barring SUNY from relocating. SUNY responded, arguing that (1) the case was not ripe, (2) the Eleventh Amendment barred suit against certain of the defendants, (3) the court lacked jurisdiction because it was only a breach of contract dispute, (4) Chapter 312 was constitutional, and (5) plaintiffs were not entitled to injunctive relief. SUNY also moved for summary judgment seeking dismissal of TM Park's Fourteenth Amendment claim on the grounds that (1) TM Park did not have a protected property interest in the lease, and (2) TM Park had not sought "just compensation" through state procedures, so the "takings" claim was premature.
 
 
 15
 On October 21, 1997, the district court granted TM Park's summary judgment motion, finding that Chapter 312(4) impaired the lease, that the impairment was substantial and that the legislation was not necessary for an important public purpose. See TM Park Ave. Assocs. v. Pataki, 986 F.Supp. 96, 107-13 (N.D.N.Y. 1997) (TM Park I). The district court also found that the case was ripe, see id. at 101-03, and dismissed certain of the state defendants on Eleventh Amendment grounds, see id. at 103-07. The New York State Dormitory Authority and the individual defendants were not dismissed. See id. The district court did not discuss the Fourteenth Amendment issue, having found in TM Park's favor on the Contract Clause claim.
 
 
 16
 On November 7, 1997, after judgment was entered, TM Park sought to amend the judgment to recover attorney's fees under its § 1983 claim. The district court reopened the judgment, and the case proceeded under TM Park's remaining claims. On March 25, 1999, the district court found that the Contract Clause violation was cognizable under § 1983 and awarded $481,341.69 in attorney's fees. See TM Park Ave. Assocs. v. Pataki, 44 F.Supp.2d 158, 160-71 (N.D.N.Y. 1999) (TM Park II).
 
 
 17
 Prior to the decision in TM Park I, TM Park sought relief in the New York Court of Claims. It sought damages on the grounds that Chapter 312(4) breached the lease and deprived TM Park of property without due process of law, that SUNY's actions violated the "due diligence" clause in the lease[1] and that SUNY's actions breached an implied duty of good faith and fair dealing. On April 29, 1999, TM Park was denied summary judgment and the case is currently proceeding. See TM Park Ave. Assocs. v. New York, Claim No. 97026 (N.Y. Ct. Cl. Apr. 29, 1999).
 
 
 18
 On appeal, SUNY challenges the district court's holding on the Contract Clause violation issue.
 
 DISCUSSION
 
 19
 SUNY argues that there is no Contract Clause violation because Chapter 312(4) does not impair the lease between SUNY and TM Park. At most, it argues, Chapter 312(4) is an anticipatory breach of the lease. As such, it argues that the suit should be dismissed. It points to the pending contract action in the New York Court of Claims and argues that Chapter 312(4) does not prevent TM Park from obtaining a breach of contract remedy. While we agree that Chapter 312(4) most likely does not impair the lease, we believe the soundest course of action is to vacate the district court's judgment as to the ripeness of the suit and its merits and order the district court to make no ruling pending resolution of the contract action in the New York Court of Claims. We believe that the contract action will resolve the dispute between these parties. If it does not, the district court may then rule on any remaining claims. If a federal resolution is necessary, the district court should address ripeness as it exists at that time.
 
 
 20
 The district court determined that Chapter 312(4) impaired the lease because "TM [Park] likely cannot recover for breach of contract, for if TM [Park] sued for damages the defendants could claim that Chapter 312 prevents it from meeting its lease obligations. In short, Chapter 312 would be a complete defense to a suit for damages." TM Park I, 986 F.Supp. at 107 (citing E & E Hauling v. Forest Preserve Dist. of Du Page County, Ill., 613 F.2d 675, 679 (7th Cir. 1980)). The district court was apparently unaware that TM Park had, in fact, sued for damages in the New York Court of Claims. The state court will necessarily determine whether Chapter 312(4) provides "a complete defense to a suit for damages."
 
 
 21
 We are mindful that federal courts "ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable." Spector Motor Serv. v. McLaughlin, 323 U.S. 101, 105 (1944); see also Clinton v. Jones, 520 U.S. 681, 690 & n.11 (1997) ("[W]e have often stressed the importance of avoiding the premature adjudication of constitutional questions."). Here, it is not necessary to pass on the constitutionality of Chapter 312(4) since the pending action in the New York Court of Claims will likely moot our case.
 
 
 22
 To show why this suit will likely be mooted, we briefly discuss the requirements of a valid Contract Clause claim. Article I, section 10, cl. 1 of the United States Constitution provides, in pertinent part, that "No State shall ... pass any ... Law impairing the Obligation of Contracts." "[A]n individual breach of contract ... does not reach constitutional dimensions and create a cause of action based on the contracts clause." Jackson Sawmill Co. v. United States, 580 F.2d 302, 311-12 (8th Cir. 1978); see also E & E Hauling, 613 F.2d at 678 ("Mere refusal to perform a contract by a state does not raise a constitutional issue."). The state, like any private party, must be able to breach contracts without "turn[ing] every breach ... into a violation of the federal Constitution." Horwitz-Matthews, Inc. v. City of Chicago, 78 F.3d 1248, 1250 (7th Cir. 1996); see also St. Paul Gas Light Co. v. St. Paul, 181 U.S. 142, 149 (1901). Thus, it is necessary to distinguish between legislative action that merely breaches the contract and legislative action that impairs it, for only the latter is cognizable under the United States Constitution.
 
 
 23
 The distinction between a breach of contract and an impairment of contract "depends on the availability of a remedy in damages." E & E Hauling, 613 F.2d at 679 (citing Hays v. Port of Seattle, 251 U.S. 233, 237 (1920)). A contract creates alternative obligations. Either perform the contract or pay damages. See, e.g., Oliver Wendell Holmes, The Path of the Law, 10 Harv. L. Rev. 457, 462 (1897) ("The duty to keep a contract at common law means a prediction that you must pay damages if you do not keep it -- and nothing else."). If a contract is merely breached and the duty to pay damages remains, then the obligation of the contract remains and there has been no impairment. See Horwitz-Matthews, 78 F.3d at 1251. This is known as the "availability-of-remedy" test.[2]
 
 
 24
 The contract action in the New York Court of Claims will necessarily determine whether TM Park has a breach of contract remedy. TM Park is claiming that SUNY breached various provisions of the lease. Without expressing any view on the merits of the dispute, two outcomes seem likely. First, TM Park may recover damages, either because (1) Chapter 312(4) does not trigger the executory clause or prevent the payment of damages, meaning that SUNY will have broken the lease without any justification, or (2) if the executory clause is triggered, the Court of Claims finds that SUNY breached some other aspect of the lease -- either the "due diligence" clause or some form of implicit duty in the lease. If TM Park recovers damages, it will demonstrate that there has been no impairment, but only a breach. Thus, under this scenario, the present suit will be mooted.
 
 
 25
 Second, the New York Court of Claims could find that Chapter 312(4) triggers the executory clause in the lease. Unless the "due diligence" clause or an implicit duty is breached, TM Park would not be able to recover damages. TM Park's failure to recover, however, would be due to the lease terminating pursuant to the bargained-for provisions of the lease itself. In this situation, although Chapter 312(4) may prevent a damage remedy, it would do so through the valid operation of the executory clause. Consequently, the lease would not be breached, let alone impaired. To hold that the valid use of the executory clause impairs the lease would effectively write the clause out of the lease. The valid use of the executory clause was a known risk when TM Park signed the lease and, if Chapter 312(4) represents a valid use of the clause, TM Park should not expect this Court to rewrite a bargained-for provision of the lease. Thus, under this scenario, the present suit will be mooted.
 
 
 26
 Under both likely alternatives discussed above, TM Park would not have an actionable claim under the Contract Clause of the United States Constitution.[3] Because the resolution of the contract action in the New York Court of Claims will likely moot our case, it is unnecessary for us to pass on the constitutionality of Chapter 312(4). Further, where, as here, the state action is proceeding, we are not concerned that our disposition will unnecessarily delay resolution of this dispute.
 
 
 27
 Finally, some comment is required on the Fourteenth Amendment claim. Without the benefit of argument, the nature of TM Park's claim is uncertain. See, e.g., Shawnee Sewerage & Drainage Co. v. Stearns, 220 U.S. 462, 471 (1911) ("The breach of a contract is neither a confiscation of property nor a taking of property without due process of law."); Jimenez v. Almodovar, 650 F.2d 363, 370 (1st Cir. 1981) ("A mere breach of contractual right is not a deprivation of property without constitutional due process of law."). Because resolution of the contract action in the New York Court of Claims may change or moot this claim, the district court also should not make any ruling on the Fourteenth Amendment claim pending the outcome in the Court of Claims.
 
 CONCLUSION
 
 28
 The district court's decisions regarding the ripeness of this issue and its merits are vacated. The district court is ordered to refrain from ruling on the Contract Clause claim or the Due Process claim until the contract action in the New York Court of Claims is resolved. If, according to the principles discussed above, TM Park's claims are not moot, the district court should reconsider the ripeness issue. The award of attorney's fees under 42 U.S.C. § 1983 was dependent on the Contract Clause violation. Therefore, that judgment is also vacated. The parties shall bear their own costs.
 
 
 
 NOTES:
 
 
 [1]
 The "due diligence" clause of the lease provides that SUNY will "timely make and diligently prosecute all appropriations requests appropriate in order that it shall have funds available to it to fulfill its obligations under this lease in a timely manner."
 
 
 [2]
 The district court also analyzed the impairment using the "legitimate expectations" test. See TM Park I, 986 F.Supp. at 107-08. Under this test, the proper focus "is on whether subsequent state law has unreasonably and unnecessarily injured the `legitimate expectations' of the . . . parties." Arriaga v. Members of the Bd. of Regents, 825 F.Supp. 1, 6 (D. Mass. 1992) (quoting United States Trust Co. v. New Jersey, 431 U.S. 1, 19 n.17 (1977)). This test is of little use in our case. See, e.g., Horwitz-Matthews, 78 F.3d at 1250-51 (describing test as "spongy"). TM Park could have legitimately expected that the lease would survive its term. Conversely, TM Park could have legitimately expected that the lease would be broken pursuant to the bargained-for executory clause. We will confine our discussion to the "availability-of-remedies" test.
 
 
 [3]
 Indeed, the only way that we can envision this suit not being mooted is if the New York Court of Claims finds that the executory clause is not triggered, but still prevents a damage remedy. In this situation, in contrast to the scenarios described above, the legislation would not trigger the termination provisions of the lease, but would prevent both the performance and payment of damages obligations. This scenario is unlikely, given that the statute does not, on its face, prevent the payment of damages and in light of the state's concession in its brief and at oral argument that "[i]f Chapter 312 does not invoke the executory clause because funds are `available,' then under New York law the State would be liable in the Court of Claims for damages if SUNY vacated the premises and failed to pay the rent."