Travis BAIM and Donna Baim, jointly and severally, Plaintiffs,

v.

Philip NOTTO, Edward J. Ritz, E.C. Barbagelata, Steven Manikas, Mark VanCort, Thomas Ciampolillo, Patrick Horan, and Erik Gandrow, jointly and severally, Defendants.

No. 00–CV–638.

United States District Court, N.D. New York.

Feb. 21, 2003.

Office of Louis–Jack Pozner, Albany, NY, Louis–Jack Pozner, of Counsel, Attorney for Plaintiff.

Carter, Conboy, Case, Blackmore, Maloney & Laird, P.C., Albany, NY, Michael J. Murphy, of Counsel, Attorneys for Defendants.

### MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. FACTUAL BACKGROUND

Plaintiffs Travis Baim ("plaintiff") and Donna Baim brought suit against defendants Philip Notto, Edward J. Ritz, E.C. Barbagelata, Steven Manikas, Mark Van-Cort, Thomas Ciampolillo, Kenny Figueroa, Patrick Horan, Erik Gandrow, and Christopher Macher, alleging: 1) illegal entry into the residence of plaintiff in violation of his Fourth Amendment rights; and 2) unlawful excessive force, both at plaintiff's apartment and at the Schenectady Public Safety Building. All defendants, at the time of the events in question, were law enforcement officers.

Several events occurred prior to trial. The parties entered into a partial stipulation of dismissal as to defendant Figueora. (*See* Docket No. 24). Defendant Maher's

motion for summary judgment was granted and all claims against him were dismissed with prejudice. (*See* Docket No. 51). Defendants Manikas and VanCort, members of the Rotterdam Police Department who were at plaintiff's apartment and allegedly participated in the alleged excessive force there, entered into a settlement agreement with plaintiff, agreeing to pay the sum of $25,000, after which all claims against them were dismissed. (*See* Docket No. 72).

At trial, only the excessive force claims against members of the Schenectady Police Department were presented to the jury. Specifically, the jury was asked to decide: 1) whether plaintiff was subject to excessive force by defendants Notto, Ritz, and/or Ciampolillo at plaintiff's apartment; 2) whether plaintiff was subject to excessive force by defendants Notto, Barbagelata, Gandrow, and/or Horan while at the Schenectady Public Safety Building; and 3) whether Donna Baim was subject to excessive force by defendants Notto and/or Gandrow while at the Schenectady Public Safety Building. After due deliberation, the jury found in favor of all individual defendants on all claims, with the exception of defendant Notto. (*See* Verdict Form, Docket No. 75). The jury found for the plaintiff against defendant Notto for excessive force at plaintiff's apartment, and awarded plaintiff $10,000 in compensatory damages. (Id.). All other claims against defendant Notto were found by the jury to be without merit. (Id.).

Following the reading of the jury verdict, the attorneys for the parties met in chambers. Without solicitation or other provocation, plaintiff's counsel immediately conceded that the jury award of $10,000 was to be set-off by the $25,000 settlement from defendants VanCort and Manikas, and that any judgment entered in plaintiff's favor was thus satisfied. The parties

returned to the courtroom and placed the judgment and set-off on the record. The judgment and satisfaction of judgment were entered nearly simultaneously. (*See* Docket Nos. 78 and 79).

Plaintiff thereafter moved for attorney's fees pursuant to 42 U.S.C. § 1988, attaching time records for work performed in connection with the case. Defendants opposed. The motion was taken on submit, and no oral argument was heard.

## II. DISCUSSION

"[A]bsent explicit statutory authority," plaintiffs and defendants "are ordinarily required to bear [their] own attorney's fees—the prevailing party is not entitled to collect from the loser." *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598, 602, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). Among the statutes authorizing the award of attorney's fees is 42 U.S.C. § 1988 (" § 1988"), which provides, in relevant part, "[i]n any action or proceeding to enforce a provision of section[ ] ... 1983 ... of this title, ... the court, in its discretion, may allow the prevailing party, ... a reasonable attorney's fee as part of the costs[.]" As the language indicates, in order to recover, a moving party must establish both: 1) eligibility to a fee award ("prevailing party" status); and 2) entitlement to a fee award ("reasonableness" of the award sought). *See Pino v. Locascio,* 101 F.3d 235, 237 (2d Cir.1996).

### A. Fee Eligibility—"Prevailing Party" Status

The Supreme Court has found that Congress intended § 1988 to apply "only when a party has prevailed on the merits." *See Hanrahan v. Hampton,* 446 U.S. 754, 758, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). "Therefore, in order to qualify for attor-

ney's fees under § 1988, a plaintiff must be a 'prevailing party'." *Farrar v. Hobby,* 506 U.S. 103, 109, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). To be deemed a prevailing party, "a plaintiff need not have succeeded on the 'central issue' in the case, and need not have 'obtain[ed] the primary relief sought[.]'" *LeBlanc–Sternberg v. Fletcher,* 143 F.3d 748, 757 (2d Cir.1998) (quoting *Texas State Teachers Assn. v. Garland Independent School District,* 489 U.S. 782, 790–91, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)); *Carroll v. Blinken,* 42 F.3d 122, 130 (2d Cir.1994).

Rather, a plaintiff is considered a prevailing party if he succeeds "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Farrar,* 506 U.S. at 109, 113 S.Ct. 566 (internal quotations and citations omitted); *see also Lyte v. Sara Lee Corp.,* 950 F.2d 101, 103 (2d Cir.1991) (reading *Texas State Teachers, supra,* as "instruct[ing] that success on any significant issue in a case which achieves some of the benefit sought by the plaintiff is sufficient to cross the threshold to a fee award of some kind") (internal quotations and citations omitted). Thus, "[a] party need not succeed on every issue raised by him, nor even the most crucial one. Victory on a significant claim will suffice to give him prevailing party status." *LaRouche v. Kezer,* 20 F.3d 68, 71 (2d Cir.1994) (internal citations omitted).

■ Though plaintiff had very limited success at trial, obtaining a favorable verdict against only one defendant on only one claim, he is still entitled to prevailing party status. He essentially had two overall claims adjudged by the jury, both for excessive force, one arising out of events at his apartments, the other arising out events at the Schenectady Public Safety Building. Success on one of those claims, even if only against one defendant, is victo-

ry on a significant claim. Therefore, his ratio of success cannot be used to deny him prevailing party status. *See Texas State Teachers,* 489 U.S. at 790, 109 S.Ct. 1486 ("[T]he degree of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all").

This, however, does end the inquiry regarding plaintiff's fee eligibility. Plaintiff must still satisfy the "'touchstone inquiry'" of the prevailing party analysis, to wit, that this limited success nonetheless resulted in a "'material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute'." *Lyte,* 950 F.2d at 103 (quoting *Texas State Teachers,* 489 U.S. at 792–93, 109 S.Ct. 1486). "The plaintiff must obtain an *enforceable* judgment against the defendant from whom fees are sought[.]" *Farrar,* 506 U.S. at 111, 113 S.Ct. 566 (emphasis added) (citations omitted). An enforceable judgment is one that "directly benefits" plaintiff at the time of judgment; "[o]therwise, the judgment ... cannot be said to 'affec[t] the behavior of the defendant toward the plaintiff'." *Id.* (quoting *Rhodes v. Stewart,* 488 U.S. 1, 4, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988)); *Bonner v. Guccione,* 178 F.3d 581, 593 (2d Cir.1999).

Thus, while ordinarily "[a] judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay," *Farrar,* 506 U.S. at 113, 113 S.Ct. 566, "[n]o material alteration of the legal relationship between the parties occurs until the plaintiff *becomes entitled to enforce* the judgment ... against the defendant." *Id.* at 113, 113 S.Ct. 566 (emphasis added). "In all civil litigation, the judicial decree is not

the end but the means. At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant that the judgment produces—the payment of damages, or some specific performance, or the termination of some conduct. Redress is sought *through* the court, but *from* the defendant." *Hewitt v. Helms,* 482 U.S. 755, 761, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987) (emphasis in original).

Defendants argue that at no point was plaintiff entitled to enforce the judgment in his favor. They admit that the jury returned with a verdict favorable to plaintiff, but contend that because the judgment memorializing the verdict was entered simultaneously with an order that the judgment was satisfied, plaintiff was never in a position to enforce the judgment. The simultaneous entries—the entry of judgment and the entry of satisfaction of judgment—came about as a result of plaintiff's counsel conceding, in chambers after the jury verdict was read in open court, and in open court following the meeting in chambers, that the $25,000 settlement between plaintiff and defendants VanCort and Manikas was to be set-off against the $10,000 jury award.

Initially, it is noted that satisfying a judgment is simply one way of affecting it's enforceability. Just because a judgment has been deemed satisfied, however, does not mean that it was never enforceable. Rather, the satisfaction of a judgment—in this case, by way of an unsolicited concession from plaintiff's counsel—serves merely to eliminate the enforceability aspect of the judgment that already existed.

Nonetheless, even assuming that the simultaneous nature of the entries does not allow for separation of the satis-

faction and entry of judgment, temporal or otherwise, plaintiff is still a prevailing party. For the sake of argument, if plaintiff's counsel's concession to the set-off was required, plaintiff would not be a prevailing party. Under this scenario, the set-off was agreed to prior to the judgment even being entered, so any argument that a "snapshot" of the events—i.e., freezing events, for purposes of analysis, at the time the judgment was entered without reference to the entry that the judgment was satisfied—would fail. If, however, setting off the settlement amount against the jury award is not mandatory, and was instead just a voluntary obligation undertaken not by plaintiff, who is the proper party seeking attorney's fees, but by plaintiff's counsel, who himself never was or will be the proper party seeking attorney's fees, plaintiff was entitled to enforce the judgment and is a prevailing party for purposes of § 1988. Therefore, the relevant determination to be made is whether, as a matter of law, a set-off was required. If the answer is in the affirmative, plaintiff is not a prevailing party. If the answer is in the negative, and the set-off concession was merely a voluntary obligation undertaken by plaintiff's counsel with regard only to satisfying the judgment, not to the independent question of fee eligibility, plaintiff is a prevailing party.

It is here found that the latter is more proper in this case. In short, set-off has not been proven to apply to this case.[1] For the doctrine to apply, there must be common damages attributable to the settling and nonsettling defendants. *Singer v. Olympia Brewing Co.,* 878 F.2d 596, 600 (2d Cir.1989), *cert. denied,* 493 U.S. 1024, 110 S.Ct. 729, 107 L.Ed.2d 748 (1990) ("When a plaintiff receives a settlement from one defendant, a nonsettling defendant is entitled to a credit of the

---

1. This is true regardless of who has the burden of proof on the set-off issue.

settlement amount against any judgment obtained by the plaintiff against the non-settling defendant *as long as both the settlement and judgment represent common damages*") (emphasis added). If anything, the evidence and allegations point to the conclusion that the damages are different. In plaintiff's "Second Amended Complaint," it is clear he has no idea which officer or officers inflicted which injury or injuries. (*See, e.g.,* Second Amended Complaint, Docket No. 23, ¶¶ 10, 11, 13). This should not be read as a conclusion that the damages attributable to the settling defendants are the same as those attributable to defendant Notto. Rather, it is only said that it is completely unclear whether set-off can be applied in this case.[2]

Consequently, plaintiff is considered a prevailing party for purposes of the § 1988 fee application. The fact that plaintiff's counsel voluntarily agreed that the settlement would satisfy the judgment does not automatically translate into a conclusion that said judgment was never enforceable. Absent proof of common damages, the judgment was enforceable, and counsel's voluntary relinquishment of any enforcement right should not be used against plaintiff to deprive him of establishing fee eligibility.

### B. Fee Entitlement—"Reasonableness" of Fee

Now that it has been determined that plaintiff is eligible for a fee award, a reasonable fee must be determined. *See Pino,* 101 F.3d at 237. The fee to be awarded to the prevailing party is based on the "lodestar" figure, "which is arrived at by multiplying the 'number of hours reasonably expended on the litigation ... by a reasonable hourly rate'." *Gierlinger v. Gleason,* 160 F.3d 858, 876 (2d Cir.1998) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)); *Luciano v. Olsten Corp.,* 109 F.3d 111, 115 (2d Cir.1997).

### 1. Initial Lodestar Calculation

#### a. hours expended

■ To demonstrate the hours claimed, plaintiff is required to submit detailed time records that demonstrate "the date, the hours expended, and the nature of the work done." *New York State Assn. for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983). These records need not be actually contemporaneously made, so long as they are least based on contemporaneously created records. *See Cruz,* 34 F.3d at 1160. " [E]xcessive, redundant, or otherwise unnecessary' " hours claimed will not figure in to the lodestar equation. *See Gierlinger,* 160 F.3d at 876 (quoting *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933).

Here, excluding "[w]ork [done] for Donna Baim only and/or claim[s] against Rotterdam police officers," plaintiff claims he is entitled to a fee award for 107 1/12 hours of work. (*See* Aff. of Louis–Jack Pozner, Docket No. 80). When adding all of the hours that are not already excluded by plaintiff himself, however, the number of hours reached is 106.83. These hours include travel time, which will require the application of a different hourly rate when the calculation is performed, *infra.* None of the hours claimed are facially excessive, redundant, or otherwise unnecessary to

---

**2.** Even if set-off were found to be applicable to this case, it is still not entirely clear that the full amount of the jury award would be lost because of the settlement award exceeding it. Several issues would need to be resolved, including whether federal common law or state law provides the proper set-off rule and which method of set-off is appropriate.

the reasonable preparation and conduct of a litigation. Thus, for the purposes of the initial lodestar calculation only—i.e., without regard to whether these hours will be reduced for other reasons, *see infra*—the 106.83 hours are accepted.

### b. reasonable hourly rate

It is well established that the reasonable hourly rate for an attorney is that which falls within the relevant marketplace rate "in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Plaintiff argues the reasonable rate in this case is $200.00 per hour. Though not "indispensable," plaintiff submits no affidavits of similarly situated attorneys to support this rate. *See Cruz v. Local Union No. 3 of Intl. Brotherhood of Electrical Workers,* 34 F.3d 1148, 1160 (2d Cir.1994). Nor does plaintiff cite any case law whatsoever that indicates the reasonable rate of an experienced civil rights attorney in the Northern District of New York is $200.00 per hour.

■ Though plaintiff apparently admits that the $175.00 per hour rate established by *TM Park Avenue Associates v. Pataki,* 44 F.Supp.2d 158, 167 (N.D.N.Y.1999), *vacated on other grounds,* 214 F.3d 344 (2d Cir.2000), used to be the prevailing reasonable hourly rate, he contends that it is now "out-dated." (*See* Plaintiff's Memorandum of Law in Support of Motion for Legal Fees, Docket No. 83, p. 4). There is absolutely no support in the case law for an increase of the rate from $175.00 per hour to $200.00 per hour. *See People ex rel. Vacco v. Rac Holding, Inc.,* 135 F.Supp.2d 359, 363 (N.D.N.Y.2001); *I.B.E.W. Local No. 910 Welfare, Annuity, and Pension Funds ex rel. Love v. Dexelectrics, Inc.,* 98 F.Supp.2d 265, 275 (N.D.N.Y.2000); *Plumbers, Pipefitters and Apprentices Local Union No. 112 Pension, Health and Educational and Apprenticeship Plans ex rel. Fish v. Mauro's Plumbing, Heating and Fire Suppression, Inc.,* 84 F.Supp.2d 344, 356 (N.D.N.Y.2000); *Sheet Metal Division of Capitol District Sheet Metal, Roofing & Air Conditioning Contractors Assn., Inc. v. Local Union 38 of Sheet Metal Workers Intl. Assn.,* 63 F.Supp.2d 211, 213 (N.D.N.Y.1999); *Carroll v. De-Buono,* 48 F.Supp.2d 191, 194 (N.D.N.Y. 1999); *EEOC v. J.B. Hunt Transp., Inc.,* available at 2001 WL 1217201, at *5 (N.D.N.Y. Sep.27, 2001). No compelling reason has been offered to increase the rate. Therefore, the reasonable hourly rate is $175.00 per hour.

■ Of the 106.83 hours claimed by plaintiff, fifteen (15) are attributable solely to "travel time" relating to plaintiff's counsel's appearance in court for trial. Plaintiff also claimed time for "conference at Baim home—travel and conference time... 1.5 hours." (Aff. of Louis–Jack Pozner, Docket No. 80, entry dated 8/25/02). Because plaintiff, the party bearing the burden of establishing fee entitlement, failed to differentiate between how much of the 1.5 hours was spent traveling and how much was spent traveling, half (0.75 hours) will be calculated as travel time. As defendants point out, travel time is generally reimbursed at half of the hourly prevailing rate. *See, e.g., Funk v. F & K Supply, Inc.,* 43 F.Supp.2d 205, 230 (N.D.N.Y.1999). Thus, these 15.75 hours will be calculated at a rate of $87.50 per hour. The remaining 91.08 hours will be calculated, for initial lodestar calculation purposes, at a rate of $175.00 per hour.

### c. initial calculation

Plaintiff receives an initial credit of 106.83 hours, with 15.75 of those hours devoted to travel time. Multiplied by a reasonable hourly rate of $175.00 per hour,

the hours not attributed to travel time—as noted, 91.08 hours—result in the initial lodestar figure of $15,939.00. Multiplied by half of the reasonable hourly rate of $87.50 per hour, the hours attributable to travel time result in the initial lodestar figure of $1,378.12. The total initial lodestar figure is thus $17,317.12. This initial figure is presumptively considered the "reasonable fee," but certain other considerations ("reductions") can result in a reduction or even increase of the figure. *See Hensley*, 461 U.S. at 434, 103 S.Ct. 1933.

### 2. *Reductions*

Defendants essentially contend that any fee award received should be reduced by or eliminated because: 1) plaintiff was successful on only one of many claims at trial; and 2) the records submitted are too vague and ambiguous for proper determination of reasonableness. Both contentions, if true, are proper grounds for reduction of the lodestar figure, and will be discussed.

#### a. *limited success*

■ While success rate has no bearing on prevailing party status, it does retain relevance in determining whether a reduction is appropriate. *See Carroll*, 42 F.3d at 129; *see also Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. Indeed, a plaintiff's success rate is considered "the most critical factor" in determining a fee's reasonableness. *See Farrar*, 506 U.S. at 114, 113 S.Ct. 566; *DeCarlo v. Perales*, 963 F.Supp. 181, 184 (N.D.N.Y.1997). Partial failure may result in a reduction, but not by strict proportionality, that is, reducing the fee award by the percentage of the total claims attributable to the unsuccessful claims, which has been rejected as inconsistent with Congressional intent by the Supreme Court. *See City of Riverside v. Rivera*, 477 U.S. 561, 578, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986).

■ Reduction for limited success may not be appropriate at all if the successful and unsuccessful legal claims "involve a common core of facts or [are] based on related legal theories." *See Hensley*, 461 U.S. at 435, 103 S.Ct. 1933; *LeBlanc–Sternberg*, 143 F.3d at 762; *Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir.1992). Further, where much time is devoted to the litigation as a whole, making the division of time among the successful and unsuccessful claims particularly difficult, a downward reduction is less appropriate. *LeBlanc–Sternberg*, 143 F.3d at 762; *Reed v. AW Lawrence & Co.*, 95 F.3d 1170, 1183 (2d Cir.1996); *Mendoza v. City of Rome*, 162 F.R.D. 260, 263 (N.D.N.Y.1995) ("The tasks performed during any hours expended on unsuccessful claims served multiple claims and were legally and factually intertwined").

Here, plaintiff prevailed on only one claim against one officer. At trial, the jury was faced with claims against three separate officers stemming from events at the apartment. The jury was also faced with claims against four separate officers stemming from events at the police station. Thus, with respect to plaintiff Travis Baim, the jury rendered verdicts on seven separate claims. Only one of these claims was found by the jury to have any merit. Success, in every sense of the word, was attained on only one claim, notwithstanding any contention by plaintiff that success accompanied the settlement between plaintiff and defendants VanCort and Manikas. Plaintiff has not moved for fees arising out of that settlement.

■ Some of plaintiff's claims are legally and factually intertwined. For purposes of supporting this conclusion, plaintiff's claims are divided into two overall categories—excessive force at the apartment, and excessive force at the Schenectady Public Safety Building. It could be argued

that the two categories as a whole are legally and factually intertwined. After all, the events at the Schenectady Public Safety Building would not have occurred but for the initial arrest, the legality of which was called into question by plaintiff. In addition, the claims are both for excessive force, and both stem from alleged actions by law enforcement officers. However, other factors militate against a finding that the overall claims are legally and factually intertwined. While the claims may be for the same alleged violation, they required proof and testimony independent of each other. This is not a situation where both claims arise out of the same incident, i.e., excessive force, assault, battery, etc. at the apartment. In other words, proving an excessive force violation at the apartment did not mean that the same was proven at the Schenectady Public Safety Building. An award is not appropriate for the overall claim of excessive force at the Schenectady Public Safety Building, and its subsidiary claims against the individual officers, because plaintiff did not prevail on that claim and it is not legally and factually intertwined with the claim for excessive force at the apartment. Some reduction is therefore appropriate.

■ The separate claims within the overall claim of excessive force at the apartment, however, are factually and legally intertwined. Plaintiff himself admitted in pleadings that he was unsure which officer allegedly use which type of force. At trial, only defendant Notto was held to account. Nonetheless, all of the alleged actions of the officers, not just that attributable to Notto, served as a frame for plaintiff's cause of action. Thus, any claimed hours that go toward preparing that part of the case attributable to the events at the apartment are properly includable in the reasonable fee.

Next, the determination needs to be made as to how much to reduce the initial lodestar figure due to plaintiff's limited success. Because most of the hours claimed could be reasonably seen as applying to any of plaintiff's or Donna Baim's claims, and are therefore incapable of proper separation or elimination, it is here found that an across the board percentage reduction is appropriate. No aid is given by the parties, and none is expected or perhaps even reliable, as to the relative weight of the two overall claims of excessive force. One could go through the hours claimed and attempt to divide hours appropriately. For example, it could be argued that the complaint, contains thirty-five substantive paragraphs, counting certain sub-paragraphs as one substantive paragraph each. Of those thirty-five, approximately twelve, or 34%, directly deal with the excessive force claims at the apartment. If equal time was spent on each paragraph, and the total time devoted to the drafting of the complaint was approximately four hours, then plaintiff would be entitled to 34% of $175.00 multiplied by 4.0 hours, which is $238.00.

However, such ventures necessarily involve assumptions, such as spending an equal amount of time on each paragraph or task in the claimed time or making guesses as to which item in a particular task goes to which particular claim, that may not necessarily be warranted. Rather than engage in such guesswork, thereby toeing the fine line of strict proportionality found to be incompatible with the purpose of § 1988, it is here found to be more appropriate to reduce the lodestar amounts—the 91.08 hours attributable to non-travel time and the 15.75 hours attributable to travel time—each by half (50%) due to plaintiff attaining success on only one of many claims.

### b. vagueness of records submitted

■ Perhaps because the time entries do not lend themselves to easy separation or identification of specific work done for specific clients, defendants argue that further reduction is warranted because of vagueness or ambiguity. Where descriptions of work done are vague and ambiguous, and therefore incapable of allowing a reasonableness assessment, the fee for such work can be eliminated or reduced. See F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1265 (2d Cir.1987) (refusing to award fees for descriptions such as "Rev. Doc." or "Clients re testimony"). Oftentimes, vague and ambiguous descriptions of work done can be made more clear when analyzed in the context of surrounding entries. See Vacco, 135 F.Supp.2d at 364; Meriwether v. Coughlin, 727 F.Supp. 823, 827 (S.D.N.Y.1989). Where the descriptions cannot be so saved, it is ordinarily more appropriate to reduce the fee by a percentage rather than outright eliminate the deficient hours. See United States Football League v. National Football League, 887 F.2d 408, 415 (2d Cir.1989); Vacco, 135 F.Supp.2d at 364 (collecting cases).

Defendants in their moving papers present a laundry list of descriptions they contend are ambiguous or vague. (See Memorandum of Law in Opposition to Plaintiff's Motion for Legal Fees, Docket No. 82, pp. 8–10). At the outset, it is noted that defendants present said list assuming that only hours attributable to the specific claim against defendant Notto, as opposed to the overall claims of excessive force at the apartment which have been found to be recoverable, can be included in any fee award. Nonetheless, after reviewing the list submitted by defendants, it cannot be concluded that any of the entries are too vague or ambiguous to warrant a reduction.

### 3. Expenses

■ The only possible addition to the fee award is the $3,999.37 claimed by plaintiff as "DISBURSEMENTS." (See Aff. of Louis–Jack Pozner, Docket No. 80, "SCHEDULE I"). " 'Attorney's fee's awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients'." LeBlanc–Sternberg, 143 F.3d at 763 (quoting United States Football League, 887 F.2d at 416). Five entries on the disbursement schedule, totaling $2,627.93, are for stenography fees for "transcript of EBTS." (Aff. of Louis–Jack Pozner, Docket No. 80). No mention is made of which witness' deposition was copied, and no mind-reading will here be employed. Because of the lack of specificity, and for the reasons above, the disbursements going to these stenography fees will also be reduced by 50%. Also excluded are two entries of $85.50 each for "witness fee and mileage." All other disbursements, including the five remaining entries of $85.50 for "witness fee and mileage" but excluding the already reduced stenography fees, will be reduced by 50% for the reasons above. Thus, the total recoverable as disbursements is $1,914.18.

### 4. Final Fee Award

The following is the broken down final fee award:

CALCULATIONS

NON–TRAVEL HOURS—

| | | |
|---|---|---|
| REASONABLE HOURS: | | 91.08 |
| HOURLY RATE: | x $ | 175.00 |
| TOTAL: | | $15,939.00 |
| REDUCTION: | | 50% |
| NEW TOTAL: | | $ 7,969.50 |

TRAVEL HOURS—

| | | |
|---|---|---|
| REASONABLE HOURS: | | 15.75 |
| HOURLY RATE: | x $ | 87.50 |

| | |
|---|---|
| TOTAL: | $1,378.12 |
| REDUCTION: | 50% |
| NEW TOTAL: | $ 689.06 |

*TOTAL HOURS—*

| | |
|---|---|
| TOTAL FEE AWARD: | $ 8,658.56 |
| EXPENSES AWARDED: | $ 1,914.18 |

*TOTAL AWARD*
*(FEES PLUS EXPENSES):*     $10,572.74

## III. CONCLUSION

Plaintiff is a prevailing party, and is thus eligible for a fee award, despite his counsel voluntarily conceding that a set-off is required and that the judgment obtained was satisfied. Plaintiff is entitled to a fee award, but such a fee award, in order to be reasonable in relation to his limited success at trial, is reduced.

Accordingly, it is

ORDERED that plaintiff Travis Baim's motion for attorney's fees and expenses is GRANTED in the sum of $10,572.74, as against defendant Philip Notto.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.